JOHN MURPHY, by JANE MURPHY, his Next Friend, Appellee, v. BETTENDORF METAL WHEEL COMPANY, Appellant.

**Master and servant:** ASSUMPTION OF RISK.  An employee having no knowledge of the defective and dangerous character of a machine with which he is at work, and who is given no warning or instruction as to how to do his work, does not assume the risk of injury incident to a defect in the machine.

**Same:** DUTY OF EMPLOYEE: CONTRIBUTORY NEGLIGENCE.  It is the duty of an employee to obey the orders of his master, and in so doing he may assume that he will not be directed to work in an unsafe place; and if injured in consequence of obeying an improper order he will not be guilty of contributory negligence as a matter of law, unless the dangers of the place were so obvious that no prudent person in a like situation would undertake it, even if so ordered.  In the instant case plaintiff was injured by the accidental dropping of a defective hammer, and it is held that as his superior was in charge of the operation of the hammer and directed plaintiff to perform the work, the dangers of which he was not aware, he was not negligent as a matter of law.

*Appeal from Scott District Court.*—HON. D. V. JACKSON, Judge.

MONDAY, NOVEMBER 20, 1911.

ACTION at law to recover damages for injuries received by plaintiff while working with a drop hammer in one of defendant's shops. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Cook & Balluff,* for appellant.

*L. E. Roddewig* and *W. M. Chamberlin,* for appellee.

DEEMER, J.—Plaintiff, a boy eighteen years of age at the time of the accident in question, was injured by having his hand caught under a trip hammer, while working with the same in the course of his employment. This trip hammer, or drop machine, was defective and out of repair, and occasionally, without any action on the part of the operator, would repeat; that is to say, the hammer would be lifted from the anvil upon which the material was to be shaped, and, without being thrown by the operator, would raise and lower itself by reason of defects in its construction. Plaintiff was set to work with this machine without any knowledge of its defects; nor did he acquire any knowledge thereof while working with the machine before he received his injuries. He was ordered by defendant to go to work with the machine, assisting one Wilkins, who had control of and was the operator of the machine. The hammer was used for shaping cleats and yokes, which were worked hot and handled with tongs, and for straightening hubs, which were worked cold and put in and taken out by hand. These hubs weighed from ten to fifteen pounds each. Wilkins was the operator and plaintiff, Murphy, was a helper, who worked at the back

of the machine, under Wilkins' directions. Except when working upon hubs, there was no occasion for anyone to put his hands under the hammer, but when hubs were straightened it was necessary to manipulate them by hand. When the foreman directed plaintiff to work with the machine, he said that Wilkins would tell him what to do. Plaintiff had worked for the defendant about different machines for about four years before he was hurt, and about three years before the accident he worked for a month or two with the machine in question in making cleats. According to his testimony, he had worked with this machine in straightening hubs all told about three or four days before he was injured, although he was put to work with the machine the last time before his injury about six weeks before the accident. During this time, but a few hours each day was devoted to straightening hubs. Plaintiff's estimate is that they worked on these hubs in all about three or four days during the six weeks. A jury was justified in finding that plaintiff was not warned of the dangers incident to the use of the machine, that it was likely to repeat, or that he was given any other kind of warning, or instructed as to the use of the machine, although all this is denied by the defendant. As the hubs were not struck any given number of blows, the machine was at all times under the control of Wilkins, the operator, and he (Wilkins) gave plaintiff a signal as to when he should put his hands in under the hammer to shift the hubs. This signal was generally given by Wilkins with a hammer; and a jury was justified in finding that plaintiff, at the time he received his injuries, had been directed by Wilkins to put his hands under the hammer, for the purpose of removing a hub. At any rate, he had his hands on or near the hub, in an effort to remove the same, when the hammer fell of its own accord, caught one of plaintiff's hands, and caused the injuries of which he complains. It seems that defendant had furnished for use about the

machine a piece of iron pipe about eighteen inches long, which was intended to be placed under the hammer as a matter of precaution when changing dies, or doing other work which necessitated the putting of one's hands under the hammer, to keep the hammer from falling by accident or otherwise; and that Wilkins, the operator, was expected to use it before directing his helper to put his hands upon the hubs. Plaintiff testified that he had seen this pipe alongside the machine, and had seen it placed under the hammer a number of times when hubs were being shaped, and that he thought Wilkins had used it about half the time, but that he did not know why he put the pipe under the hammer; that no one told him what it was for; and that he was never instructed not to put his hands under the hammer until the pipe was in place, or given any other instructions than to do what Wilkins told him.

These latter matters are all denied by defendant, but the jury evidently believed the plaintiff, and we must accept his as the true version. We must also find that Wilkins gave plaintiff a signal to put his hands under the hammer, and that plaintiff did not know whether the pipe had been placed under the hammer or not. These, then, are the material facts, stated most strongly in favor of plaintiff, of course; for a jury had the right to view the testimony in its most favorable light to him.

For appellant it is contended that, no matter if negligence be conceded, plaintiff, as a matter of law, assumed the risk incident to the use of the machine, and was guilty of contributory negligence. These are the only propositions in the case.

As to assumption of risk, it is clear that the plaintiff did not know of the defective and dangerous character of

1. MASTER AND SERVANT: assumption of risk.

the machine; that he was given no warning or instructions as to how to do his work, except that he was to do what Wilkins told him. A jury was justified in finding that he did not know

of the defective character of the machine, or of the dangers incident to its use in that condition, and the maxim, *"Volenti non fit injuria,"* does not apply.

As to contributory negligence, it must be remembered that while the employer furnished a piece of pipe to be placed under the hammer when it was raised, and it be-

2. SAME: duty of employee: contributory negligence.

came necessary to do any work with the hands under it, this pipe was in the possession of and under the control of the operator, Wilkins, whose duty it was to see that it was placed in position, and that plaintiff did not know it had not been placed under the hammer when he placed his hands upon the hub. Moreover, it was plaintiff's duty to follow Wilkins' directions, and to take out the hub upon orders from Wilkins. He had the right to assume, therefore, that Wilkins would not order him to place his hands under the hammer until it was safe to do so, and having received the order it was his duty to obey it, unless he actually knew it was unsafe to obey. Even then, unless he knew that it was imprudent for him to put his hands under the hammer without the use of the pipe, he was justified in obeying the orders of his superior.

The rule, as generally stated, in this connection, is that a servant who is injured in consequence of obeying an improper order of his master, or of his master's representative, is not guilty of contributory negligence as a matter of law, unless the risk is so great or the danger so obvious that no prudent person in a like situation would undertake it, even when ordered to do so. *Light v. Railroad,* 93 Iowa, 83; *Gorman v. Des Moines Brick Co.,* 99 Iowa, 257; *Stoutenburgh v. D. G. Co.,* 82 Iowa, 179. In such cases the question is for a jury under proper instructions. *Klaffke v. Axel Co.,* 125 Iowa, 224; *Bell v. Axel Co.,* 146 Iowa, 337. Even if the evidence showed that plaintiff knew the pipe was not in position before placing his hands under

the hammer, we still think the question of contributory . negligence was for a jury.

Finding no error in the record, the judgment must be, and it is, *affirmed*.