82 179
99 264

82 179
102 341

82 179
124 449

82 179
132 733

T. W. STOUTENBURGH, Appellee, v. DOW, GILMAN, HANCOCK Co., Appellant.

1. **Negligence:** MASTER AND SERVANT: DEFECTIVE APPLIANCES: EVIDENCE. The plaintiff was employed as "second miller" in the roller mills of the defendant, his hours of work extending from midnight to noon, during which time he was in charge of the mill in which he was employed. At about half past five o'clock on a morning in the month of September the fifth break or grinding rollers becoming clogged with an accumulation of material, the plaintiff undertook to clean out the material while the rollers were in motion, and while so engaged his left hand was caught between the rollers, and so injured as to necessitate amputation. While the evidence was conflicting, it was such as to warrant the jury in finding that the clogging of the rollers was due to a defective hopper from which the material was fed to said rollers, and that the plaintiff had complained of the defective nature of said hopper to the manager of the mills, and was given assurances that the same would be removed and the trouble remedied, but this was not done. It further appeared that the mill was lighted by electric lights during the night and until five o'clock in the morning, when yet dark, and from that hour until daylight the plaintiff was obliged to work by gaslight, which was so dim as compared with the electric light as to render the plaintiff's duties about the machinery more dangerous. The plaintiff likewise complained of this change of lights, and was promised by defendant that the electric light should be continued until daylight, but this was not done. *Held*, that a verdict in favor of the plaintiff for damages for the injury sustained was supported by the evidence.

2. ———— : ———— : ———— : ————. A miller employed in the mill prior to the employment of the plaintiff was permitted to testify, on behalf of the plaintiff, that he had experienced the same trouble as the plaintiff with the fifth break rollers, and had complained thereof to the manager, and was given to understand that the defect would be remedied. *Held*, that the evidence was material upon the question whether the hopper was in fact defective, and as tending to prove an admission of such defect by defendant's manager.

*Appeal from Scott District Court.*—HON. W. F. BRANNAN, Judge.

THURSDAY, FEBRUARY 5, 1891.

ACTION to recover damages for a personal injury. There was a verdict and judgment for the plaintiff for four thousand dollars. The defendant appeals. *Affirmed.*

*Cook & Dodge*, for appellant.

*Bills & Hass*, for appellee.

ROTHROCK, J.—I. The defendant is a corporation, and is the owner of three flouring-mills in the city of

1. NEGLIGENCE: master and servant: defective appliances: evidence.

Davenport. The plaintiff is a miller by occupation, and about August 17, 1886, he entered the employment of the defendant in one of its mills, known as the "Crescent Roller Mills." He was what was known as the "second miller." The mills were operated night and day, and the plaintiff came on duty at midnight, and continued in charge as miller until noon of that day. The mills are what are known as "roller-mills," which consist of a succession of sets of rollers, through which the grain is passed until the process of rolling or grinding is completed by the separation of the flour from the bran. At about 5:30 A. M., on September 30, 1888, the fifth break or grinding rollers clogged with an accumulation of material coming down from above, and the plaintiff undertook to clean out the material which was deposited on the top of the rollers, and while so engaged his left hand was caught between the rollers, and was so crushed and injured that it was necessary to have it amputated.

It will be observed that the plaintiff was familiar with the machinery in the mill, and it is conceded that he had control of the operation of the mill while he was on watch. He had the management in the sense that, if he had ordered the mill to be stopped until he could clean out the material which clogged the rollers, it would have been the duty of the engineer or party in charge of the motive power to obey his order. But the

plaintiff was under the general direction of one H. C. Johnson, who had the control and management of not only the said Crescent mills, but of the other mills owned and operated by the defendants. The break rolls or grinding rolls were on the first floor of the mill. The grain passed through the first set of rollers, and, as we understand, was elevated, and then passed down in a spout to the second rolls, and so on to the fifth rolls, where the injury was received. When it reaches the fifth rolls, the material may properly be called "bran." The flour is nearly all separated from the bran by the other rolls. Over this fifth set of rolls, and on the second floor, there was a large hopper in which the material was received from above, and conducted from the hopper to the rolls by means of a spout. The plaintiff claims two grounds of negligence on the part of the defendant as the basis for a right of recovery. The first is that the large hopper was worse than useless, and that it was negligent and dangerous to use the mill with that hopper because its sloping sides had a tendency to retard the passage of the material in an even and steady flow, and that it stuck to the sides of the hopper, and banked up, so to speak, and would then fall in a mass upon the rollers, and clog them. He further claims that he discovered that the hopper was the cause of the clogging of the rollers, and that it was dangerous to clean out the material when the rollers clogged, and that he made complaint to Johnson, and that Johnson promised that he would have the hopper removed and the trouble remedied, and that the plaintiff continued in the employment believing that Johnson would have the matter attended to, but that he negligently failed to apply any remedy. The other alleged act of negligence relied upon by the plaintiff is that up to about ten days before the injury the mill was lighted with gas, and that electric lights were then substituted, which greatly increased the illumination of the mill, and that this light was shut off about half past five o'clock in the morning, when it was still dark, and that plaintiff was then compelled to light the

gas, which gave but a dim light as compared with the electric lights, and rendered it more dangerous to attend to his duties about the machinery, and especially to attend to the fifth roll when clogged; that the electricity was turned off on the morning of the injury, and that plaintiff was compelled to light the gas, and that immediately thereafter the fifth rollers clogged, and the change in the lights confused the plaintiff as to the position of the clogged rollers, and materially contributed to produce the injury; that the plaintiff had complained to said Johnson about shutting off the light so early, and that he promised to have it continued until daylight, but failed to keep his promise, and that the plaintiff continued in the service relying upon such promise; and that the injury was received without negligence on the part of plaintiff. The answer is a denial of all the alleged negligence on defendant's part, and a denial that there was any defect or danger about any of its machinery, and a denial that Johnson promised to remove the hopper, or to make any changes about the lighting, or that he was at any time requested to do so by plaintiff, and that the plaintiff was chargeable with contributory negligence in cleaning the rolls with his hands without throwing the belting so that the rolls would not revolve and catch his hands, and that he carelessly and negligently allowed his hand to be injured, without any fault or negligence on the part of the defendant.

We have presented the substance of the issues upon which the case was presented to the court and jury. The cause was argued at the bar of this court with most consummate ability upon the part of both parties, and we have printed arguments which clearly present all the questions to be considered in determining the rights of the parties. Some objections are made to some of the instructions given by the court to the jury which we do not deem it our duty to consider in detail. We have carefully examined the charge to the jury in all its parts, and desire to say that we have rarely seen its ꞏnal in clearness of expression, and as a plain, concise

and correct exposition of the law as applied to the issues and the facts as disclosed in the evidence.

It is urged that the verdict is not supported by the evidence. This ground of objection to the judgment is not the first alleged error by the counsel for the appellent. It appears to us, however, that, if that question is first determined, it will serve in a large degree to properly understand our determination of another material question made by counsel. There is no dispute that the plaintiff received the injury by using his hand in cleaning out the material which had clogged and stopped the rollers. When we come to the disputed questions of fact, we will not determine the weight of the evidence. It is well understood that it is not the province of this court to interfere with the verdict of the jury if fair-minded men might well come to different conclusions upon the facts in the case as disclosed in evidence. We will, therefore, state the facts as briefly as may be which we think the jury were warranted in finding.

The fifth set of rollers was frequently clogged and stopped by reason of the irregular feed of material from above. The plaintiff claims that this was caused by the hopper, and the defendant denies it was occasioned thereby. If it was the cause, the hopper was an improper appliance, and, if it was dangerous to clean out the material which clogged the rollers, the hopper should have been removed by the defendant. There is a large amount of evidence upon this question. It is in plain, unmistakable and irreconcilable conflict. It consists of the testimony of millers and others who are familiar with the operation and construction of roller-mills. One fact is not in dispute, and that is that the frequent choking and stoppage of the fifth rollers was attributable to some cause, and the jury were warranted in finding that it was because of the hopper.

It is claimed that the plaintiff should have stopped the mill, or thrown off the belt which ran the fifth roller, before attempting to clean out the material, and that he should not have used his hand. It is true that he could have stopped the mill; but there is evidence that this

was not the manner of proceeding to remove the material, and that Johnson, the superintendent, told the plaintiff not to throw the belting off this fifth break roll to clean it out, because it specked the flour. It cannot be said, as matter of law, that the plaintiff was chargeable with contributory negligence by using his hand to clean the rollers, or by not stopping the mill or throwing the belt.

It has been the settled law of this state for many years that when an employe, in order to perform his duty, is required to use defective machinery, and makes complaint thereof to his employer, who promises to repair the defect, the servant can recover for an injury caused thereby within such a period of time after the promise as would not preclude all reasonable expectation that the promise might be kept; and this promise may be express or implied. *Kroy v. Railroad*, 32 Iowa, 357; *Greenleaf v. Railroad*, 33 Iowa, 52; *Muldowney v. Railroad*, 39 Iowa, 615; *Lumley v. Caswell*, 47 Iowa, 159, and other cases. And the rule is practically of universal application in this country. It is well explained in Cooley, Torts, page 559, as follows: "If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurance that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume the risk." There is evidence in this case from which the jury were warranted in finding that the plaintiff made complaint of the danger, and attributed it to the hopper, and that Johnson promised to remedy it in some way. It is true, it could not be found as a fact that he in express words promised to remove the hopper; but that promise might fairly be implied from what he did say. It is claimed that the promise, if any, was so remote from the injury in point of time that the plaintiff had no right to rely upon it.

Here, again, was a question for the jury, and the court properly charged the jury upon that feature of the case. The repair necessary to obviate the choking of the rollers involved the stoppage of the mill, and probably alterations, which would require some time.

What we have said in regard to the duty and obligations of the parties in reference to the choking of the rollers applies also to the turning out of the electric lights before daylight. There was evidence to authorize a finding that a request was made by the plaintiff to have the lights burning until daylight. Now, it is not to be understood that, because such promises were made, the plaintiff was thereby freed from contributory negligence in cleaning the material from the rollers. He would have no right of recovery if, when the lights were turned out, he had groped in the dark, and placed his hand on the rollers, and recklessly and negligently allowed it to be drawn between them. But the evidence authorized a finding that he attempted to perform what might well be termed a dangerous act, and that he was not negligent in the manner in which he used his hand in removing the material from the rollers. It is possible that we have not mentioned all that is claimed as wanting in the evidence to support this verdict.

Without further elaboration, and after a careful examination of every fact testified to by the witnesses, we are led to the conclusion that the verdict is fully sustained, and that it ought not to be disturbed. There is one fact which stands out all through the records and that is, that this machinery was imperfect and defective. If it had been otherwise, the choking of the fifth rollers would not have been so frequent; and we think the evidence fairly shows that it was attributable to the use of the hopper. It is to be admitted that these hoppers are in use in many of the roller-mills in the country, and in many others they are not; but it is not a question of law for a court to determine, under the evidence in this case, that the hopper was not the cause of the clogging and choking of the rollers.

II.   It appears that one William T. Babbitt was
employed by the defendant as a miller in the same mill.

2. THE same.

His employment was before the plaintiff
entered the service of the defendant.   His
deposition was taken by the plaintiff.   He testified, in
substance, that he had trouble with the fifth break rolls
of the mill on account of choking; that it occurred
frequently, and that he usually cleaned out the accu-
mulation of material with his hands, and that there was
no other practicable way of doing it, and that the
hopper was the cause of the choking most of the time;
that the clogging was usually caused by the accumula-
tion of soft, fluffy material adhering to the sides of the
hopper, and then falling down in a mass on the roll.
He was asked this question:   "State whether or not
you ever made any complaint about said hopper over
said fifth break roll being kept in use in said mill.   If
yes, to whom did you make such complaint?   When,
and how often?   What did you say, and what reply or
answer did you receive?"   The defendant objected to
the question on the ground that it was immaterial and
irrelevant.   The objection was overruled, and the
witness answered as follows:   "*A*.   I made com-
plaint about said hopper over said fifth break roll in
said mill several times to H. C. Johnson, the head
miller.   I cannot give the exact dates of the times that
I complained about it, but I complained about it several
times during the period that I remained there.   I told
Mr. Johnson that that roll was continually giving me
trouble, and that he had ought to do something to
remedy it.   I cannot recall the exact words of his
various answers, but they were of such a nature that
gave me to understand that he would remedy it as soon
as he could get the time."

It is strenuously contended that the admission of
this and other evidence of like character by the same
witness was prejudicial error.   The argument, briefly
stated, is that it is a plain departure from the rules of
evidence; that it does not tend to prove any issue in the

case; that it is collateral, and affords no reasonable presumption or inference as to the principal matter in dispute.   It is claimed, in substance, that the issue presented by the pleadings was whether Johnson promised the plaintiff to amend the alleged defect, and that proof that he had before that promised Babbitt to do the same thing did not tend to show that he made the promise to the plaintiff.   This may be conceded, and yet we think the evidence was properly allowed to go to the jury. The issue as to the promise to repair the defect was not the only issue in the case.   Back of that was the most important issue, which was whether there was in fact any defect.   The defendant contended all through the trial, and contends now, that the hopper was a proper appliance; that it was not a defect in the machinery of the mill.   Babbitt testified that it was a defect, and the evidence complained of amounts to a tacit admission of Johnson that it was defective.   The witness states that he gave him to understand that he would remedy it as soon as he could get time.   It is always competent to prove the admission of a party against his interest; and the question and answer tend to prove that Johnson conceded   or   admitted   the   defect   complained of, Johnson was the general agent of, and represented, the defendant to the fullest extent.   We do not feel called upon to further consider the case.                       ◄

The judgment of the district court is AFFIRMED.