HARRY J. GORMAN, Appellant, v. THE DES MOINES BRICK MANUFACTURING COMPANY.

99 257<br>116 722

**Master and Servant:** ASSUMING RISK OF DEFECTIVE MACHINERY: *Contributory negligence.* In an action for personal injuries, it appeared that it was plaintiff's duty to keep defendant's machinery in running order; that a certain bearing became heated; that plaintiff poured water on the bearings, and laid folded cloths over it; that, this not sufficiently reducing the heat, he took a wrench, and, while the machinery was in motion, undertook to loosen the nuts on the bearing; that the wrench slipped and his hand was injured by a cogwheel; and that he so used the wrench, that if it slipped, his hand would certainly go into the cogwheel. Plaintiff testified that he knew such fact. *Held,* that plaintiff was guilty of contributory negligence, though the heating of the bearing was caused by defects in the machinery which the owner had promised to repair.

*Appeal from Polk District Court.*—W. F. CONRAD, Judge.

FRIDAY, OCTOBER 16, 1896.

ACTION at law to recover damages for a personal injury sustained by plaintiff while in defendant's employ as a repairer of machinery. At the conclusion of the plaintiff's evidence, the court directed a verdict for defendant. Plaintiff appeals.—*Affirmed.*

*J. D. Laws* and *Carr & Parker* for appellant.

*Cummins & Wright* for appellee.
VOL. 99 1a—17

DEEMER, J.—The defendant is a manufacturer of brick, and, in the prosecution of its business, uses certain machinery, denominated a "crusher," "pug mill," and "molder." The crusher is located below the pug mill, and so arranged that the earth, when pulverized by the crusher, is carried up and dumped into the box of the pug mill, where it is tempered and mixed, and, when of the proper consistency, it is carried into the molder. These various machines are not geared so as to move together, but each, in its operation is independent of the other. The pug mill is constructed with a horizontal shaft passing through the same, on one end of which is a large cogwheel. Against this cogwheel a smaller one is constructed, which is attached to a smaller horizontal shaft running parallel with the first, upon which was a small clutch pulley, over which ran a belt connected with the engine. The power from the engine was thus conducted, through means of the belt, clutch pulley, horizontal shaft, and cogwheels, to the machinery which tempered and mixed the clay. At the time he received the injuries complained of, plaintiff was employed by the defendant to look after its machinery, to oil the same, repair breakage, and to keep the appliances in running order. He alleges that the machinery and appliances were improperly, negligently, and carelessly constructed, in this: that the horizontal shaft, to which was attached the clutch pulley, was so constructed that it rested upon two bearings, one on either side of the cogwheel, and each distant therefrom about eight inches; that, between the bearing on the side of the cogwheel and the pulley, the shaft extended a distance of about eight feet, and that the reasonably safe and proper construction of the machinery required that a bearing be constructed at or near the place where the pulley clutched the shaft; but that defendant

negligently and carelessly refused to construct a bearing at that point, and, as a result, the shaft constantly and violently vibrated when the machinery was in motion, producing a great amount of friction upon the bearings and boxes near the cogwheel, causing the same to become heated at times; that the defendant was also negligent in failing to place any guards around, or covering over, the cogwheels. Plaintiff further alleges that in the month of November, 1893, while engaged in the performance of his duty, he discovered that the boxing referred to had become greatly heated, so much so as to require prompt attention, and that he proceeded to reduce the same by loosening the burrs of the bearings so as to give the shaft more play; that, while attempting to loosen the burr, his wrench slipped off the nut, and his right hand was caught in the cogwheel, and so severely injured that amputation became necessary; that he was free from negligence on his part; and that the accident was wholly due to the negligence and carelessness of the defendant. Plaintiff further states that the reason why he did not stop the machine before attempting to loosen the nut was because he was directed by his employers to keep the machinery in constant operation, and not to stop the same for repairs until six o'clock P. M., as they were behind with their orders, and desired to keep the factory running to its full capacity. Plaintiff also states that he knew the condition of the shaft and machinery before he received his accident, but that he had repeatedly called defendant's attention to the defects, and was promised by the superintendent that they should be remedied. The defendant answered, denying the allegations of the petition, and pleaded a settlement with the plaintiff. At the conclusion of the plaintiff's evidence, defendant filed a motion for a verdict, based upon the grounds (1) that the alleged negligence was not the approximate cause of the

injury; (2) that the plaintiff assumed all risks incident to work about machinery, because he knew of its alleged defects; (3) that plaintiff was guilty of contributory negligence; and (4) that there is no evidence that anyone ordered or authorized plaintiff to unscrew the nuts while the machinery was in motion, and that plaintiff assumed all danger resulting from his work. The appeal is from the rulings of the court sustaining this motion.

It is conceded by counsel for appellee, that the machinery was constructed as alleged by the plaintiff in his petition; that the box became heated, as charged; that plaintiff's hand slipped into the cogwheels, in an attempt to unscrew the nuts at the shaft bearing; and that he received the injuries of which he complains. They deny, however, that the plaintiff was ordered not to stop the machine, and deny that he was directed to do the work in the manner attempted. And they further say that, if it be found that he was directed to do the work in the manner he did, yet he cannot recover, because the danger was so imminent and manifest, as to prevent a reasonably prudent man from undertaking such work. The evidence shows, without question, that plaintiff complained of the defect in the construction of the shaft to the proper officers of the company, and that they promised to remedy it by constructing additional bearings; so that the question of waiver is out of the case.

The first point discussed by counsel is that of approximate cause. Appellee's counsel contend, in support of the ruling of the court below, that the defective construction of the shaft and bearings was not the efficient cause of the injury; while, on the other hand, appellant contends that it was the primary and proximate agency which led to the injuries complained of. In the view we take of the case, it is not necessary to determine this question; for, if it be

conceded that the defective construction of the shaft was the efficient cause of the injury, yet the plaintiff ought not to recover, because of his negligence contributing thereto.

The evidence shows that the bearing or boxing referred to had become badly heated on the day that the plaintiff sustained his injuries; that, to reduce the heat, the plaintiff poured water upon the bearings, wet and folded an old pair of pants, and laid it over the same, and afterwards used oil and water in an attempt to cool the boxing. These appliances did not sufficiently reduce the heat, and thereupon plaintiff took a wrench, and attempted to loosen the nuts on the cap of the bearing; and, while so engaged, the wrench slipped from one of the nuts, and plaintiff's hand went into the cogwheel, and was so injured as to necessitate immediate amputation. The evidence further shows that the nut with which plaintiff was working was but five inches from the revolving cogwheels; that the nuts were covered with oil and water, and, in consequence, were very slippery; that plaintiff knew when he attempted to use the wrench in the manner he did, that it might slip off; that he so used the wrench as that, if it slipped from the nut, his hand would certainly go into the rapidly revolving cogwheel. And yet, with all this knowledge, plaintiff proceeded to do the very things which the least foresight would have pronounced, not only dangerous, but exceedingly reckless. Now, it is practically conceded, as it must be, by counsel for appellant, that, if this were all there is of the case, plaintiff's negligence would bar him of recovery; but it is contended that the injury was due to the defective machinery, which defendant had promised to repair; and it is further insisted that the plaintiff was directed and ordered by the officers of the brick company to do the work in which he was engaged, in the manner in which he did

it. The first of these contentions is to meet the proposition, that the plaintiff assumed the risks incident to the use of the defective machinery, by reason of his use thereof with knowledge of the defects; and we may say in this connection that there was evidence of a promise on the part of the defendant's president and superintendent to repair the shaft, but no showing whatever of any promise to box or cover the cogwheels. So that plaintiff assumed the risk incident to the use of the uncovered cogwheels, for the reason that he had notice thereof, and continued to work on or about them without any promise of repair. As to the vibrating shaft, plaintiff did not assume the risk incident to work about it, for there was a promise to repair, upon which he had the right to rely; and, if the accident was due solely to this defect, there is no doubt but that the case should have gone to the jury. We have, then, a case where the danger incident to the use of the defective machine was not assumed by the servant, and it follows that the plaintiff should not be defeated because he continued to work on or about a machine which he knew to be defective.

But the question yet remains: Did he, by any want of reasonable care on his part, directly contribute to the injuries of which he complains? The doctrine of acceptance of risk must not be confounded with that of contributory negligence. In the former case the doctrine is, that one who, with full knowledge of the danger, or of the means of knowledge which he should have exercised, voluntarily remains in the employ of his master, disables himself from recovering damages, under the maxim, *"Volenti non fit injuria."* In the latter case recovery is denied, because the plaintiff is wanting in that degree of care, which, under the circumstances, he ought to have used, which want of care contributed to bring about the accident. Let us see, then, if plaintiff exercised that degree of

care which he ought, in working with this defective machine. He says that he knew the nuts were covered with oil; that his wrench was likely to slip off, that the vibration of the machinery rendered the use of the wrench in the manner he used it, dangerous; and that he also knew, if the wrench slipped, that his hand would certainly go into the revolving cogs, and be ground up, as, in fact, it was. It also appears, that plaintiff could have stopped the machinery and fixed the nuts, in a very brief space of time, ranging in twenty seconds to-five minute. It seems too clear for argument, that plaintiff was guilty of contributory negligence, unless it be found that he was directed, by his superiors, to do the work in the manner he did. His counsel claim in argument that such was the case. We have examined the evidence with reference to this claim, with great care, and fail to find any direction of this kind. It is true, there is testimony to the effect, that the president of the company had told the plaintiff that he wanted the machinery crowded for all it was worth; and that he (plaintiff) should go ahead and keep the machine running; and that he told plaintiff not to stop machine, and take the cap off, so as to clean it, as plaintiff had done prior to the time of the accident. He did not, however, tell the plaintiff not to stop the machine for the few minutes which would enable him to loosen the nuts; and plaintiff did not, as we view the matter, so understand, for he had previous to the day of his injury, stopped the mill a great many times, in order to fix the bearings or loosen the nuts. The testimony does not show that plaintiff was directed to do the work in the manner he did it. At most, he was ordered not to stop the machine so as to delay the work. The stoppage needed to enable the plaintiff to loosen the nuts with safety to himself would not have delayed the work for more than five minutes, even if it did at all; for, if the molder was

full when the pug mill was stopped, there would be no appreciable delay.

But if it be conceded that the plaintiff was given specific directions to do the act in the manner he did, or that he was justified in believing that such were given him, yet we are not prepared to say that the court was in error in sustaining the defendant's motion. Plaintiff testified that, when he attempted to loosen the nut, the machine was vibrating, so that the wrench he was using was likely to slip off; and that he knew that, if it did slip off, his hand would go into the revolving cogwheels, which were not more than five inches from his hand. Now, it seems to us that the danger was so manifest as to prevent a reasonable, prudent and cautious man from risking it, even upon an order from his superiors in authority. It is well settled that while obedience to an order from a superior authority will, as a rule, relieve one from the charge of contributory negligence, yet, when the act to be done is so reckless or obviously dangerous as that no reasonably prudent man would have undertaken it, the order from the superior will be no excuse. Plaintiff was familiar with the dangers attendant upon the use of the wrench so close to the moving cogwheels, as was the defendant's superintendent, and in obeying the orders given him, if it be conceded any were given, he assumed the risks incident to the performance of his task. The case differs from that of *Stoutenburgh v. Dow, Gilman Hancock Co.*, 82 Iowa, 179 (47 N. W. Rep. 1039), relied upon by the plaintiff, in this: that there was evidence in that case that the proper manner of removing material from the mill was to do it while the machinery was in motion. In this it is conceded that the better and safer way to do the work was to stop the pug mill. We reach the conclusion that the court was right in sustaining the motion, and the judgment is AFFIRMED.