C. E. TISHER, Appellee, v. UNION P. R. Co., Appellant.

**MASTER AND SERVANT:** Proximate Cause—Certainty Required—Conjectures and Possibilities. Causal connection between negligence alleged and injury suffered must be established. Possibility and conjecture are not enough. Evidence reviewed, and *held* a mere conjecture, whether plaintiff fell because of the defective condition of the grabiron on an engine, as alleged, or because his foot slipped on the step of the engine.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

WEDNESDAY, JANUARY 19, 1916.

ACTION for the recovery of damages resulted in the judgment against defendant, from which it appeals.—*Reversed.*

*Wright & Baldwin,* for appellant.

*Tinley, Mitchell* and *Pryor,* for appellee.

Ladd, J.—A fast freight train left Council Bluffs on defendant's railroad at 10:20 o'clock in the evening of June 10, 1913, hauled by two engines. The plaintiff was fireman on the head engine, with run to Grand Island, Nebraska. His duty was to "keep the engine hot, keep coal and water in her and look out for signals". An additional supply of water became necessary at Central City, Nebraska, which was reached at 8:43 A. M. of June 11th. In leaving the cab, plaintiff took hold of the grabiron with his left hand; and as he started down, his foot slipped off the step (of the engine), and he fell and was injured. The petition alleged, among other things, that the defendant was negligent in permitting this grabiron to become loose and in not keeping it securely fastened, and this was the only charge of negligence submitted to the jury. But the two questions are raised on appeal: (1) Whether a case was made out for the jury; and (2) whether the court should have instructed the jury on the theory that the grabiron might have gotten out of repair after the train left Council Bluffs.

*MASTER AND SERVANT: proximate cause: certainty required: conjectures and possibilities.*

I. The right to recover at all was challenged at the close of all the evidence by a motion to direct a verdict for defendant and also by motion for new trial, and this necessarily involves an examination of the record before us. The grabiron alleged to have been loose was, according to plaintiff, "fastened at the top to a steel plate about half an inch thick by bolts which pass through the grabiron and the steel plate. The place where this grabiron is fastened, to the steel plate, would be about the center between the top and the bottom of the cab window. The cab window is probably four, five or six inches from the end of the cab. The grabiron strikes the cab about half way from the top and the bottom of the window. The window was open and there were no curtains or anything in. The grabiron comes down along the side of the cab and back under and is fastened to another iron plate, underneath the cab proper, so that it is parallel with

the side of the cab, up and down and extends out a little so you can get hold of it.''

The steps down are attached to the engine tank.

From plaintiff's testimony and that of the engineer, it was to be inferred that the handhold on the fireman's side was loose and had a play of three, four or five inches. Whether it was loose at the top, as plaintiff stated, or, at the bottom, as sworn to by the engineer, is not very material. It was enough if, owing to a bolt's being gone or nut's being loose, the handhold wobbled back and forth as stated. The plaintiff testified that ''the whole rod was loose'', but it was not entirely unfastened at either end. He was asked:

''As the train went through Central City, what did you do about getting ready for the purpose of taking water? A. I reached out and took hold of the grabiron with my left hand and started down, taking hold with this hand (indicating), and as I took hold of the grabiron, my foot slipped off the step and it gave and I went out on my head. Q. Did you notice anything on the steps of the car? A. No, sir; I noticed there was coal jarred down there once in a while. Q. Did you see any coal there at that time? A. No, sir, not on the steps. I didn't suppose there was. Q. Now, I am talking about the step where you were standing when you fell from the engine down on the ground. Was there any coal on the step where you were standing at that time? A. No, sir, I don't believe there was. The engine was not going over two miles per hour . . . Q. I want you to tell the jury just how you took hold of the grabiron—what hand did you use? A. I took my left hand . . . This was the first trip I ever made on engine 333 and I knew nothing about the condition of the grabiron until after I was hurt.''

But he was familiar with that type of engine and knew where the handholds were on the fireman's side and had used them constantly. On cross-examination, he testified that, upon getting on the engine at Council Bluffs on the engineer's side, the grabirons seemed firm.

"Q. As a general thing you always look over things to see? A. They are supposed to be in shape. Q. And you generally for your own protection satisfy yourself that everything is in shipshape and ready to go, don't you? A. They always have been. Q. You do that as a matter of fact for your own safety, don't you? A. Yes, sir. Q. So you were satisfied when she started out that she was in proper shape, weren't you? A. In my judgment she was."

He testified further that the handhold seemed to be all right at Valley, a station on the way. Defendant's engine inspector testified that he had inspected the engine at 3 o'clock A. M. of June 10, 1913, and found the handholds or grabirons all right.

Such was the evidence bearing on the happening of the accident, and, even though defendant may have been negligent, causal connection between its negligence and the injury was not established. That this must appear in some way, either from the evidence or 'by reasonable inference from the circumstances proved, is manifest. As said in *Ashcraft v. Davenport Locomotive Works,* 148 Iowa 420:

"If the circumstances surrounding the case do no more than indicate a possibility of the accident happening because of a defective appliance, or if they are no more consistent with the theory that the accident was due to some defect but equally explainable on some other theory than the one charged, then plaintiff has not made out his case. The reason for this is that the burden is upon the plaintiff, not only to show some defect for which the master was responsible, but also to show that this defect was the proximate cause of the injury." *O'Connor v. Chicago, R. I. & P. R. Co.,* 129 Iowa 636; *Lehman v. Minneapolis & St. L. R. Co.,* 153 Iowa 118.

The causal connection between the injury and the negligence of the defendant may be proved by direct or circumstantial evidence. If the latter, it must be something more than consistent with plaintiff's theory of how the accident occurred. It must be such as to make that theory reasonably

probable, not merely possible, and more probable than any other hypothesis based on such evidence. The only account of the occurrence is found in this extract from plaintiff's evidence:

"I reached out and took hold of the grabiron with my left hand and started down, taking hold with this hand (indicating) and as I took hold of the grabiron, my foot slipped off the step and it gave and I went out on my head."

Was the fall in consequence of his foot's slipping or of the grabiron's giving? The record casts no light on this inquiry. What occasioned the foot to slip is not disclosed, nor is there anything to indicate but that, had he kept hold of the grabiron, he would not have fallen. Nor can it be said that both contributed to his fall. To say which, or whether both caused his fall, is mere matter of conjecture. The explanation of the occurrence urged by defendant that it was in consequence of his foot's slipping is quite as consistent with the proof and fits with the other facts as reasonably as that of plaintiff to the effect that the fall was because of the gripiron's giving way to the extent that it was movable. Would he have fallen but for his foot's slipping? Would this have happened but for the defective grabiron? The record contains no evidence from which the jury might have drawn an inference or on which it might have based an answer, and for this reason the judgment must be and it is— *Reversed.*

Evans, C. J., Deemer and Gaynor, JJ., concur.