NETTIE A. AVISE, Administratrix, Appellee, v. INTERURBAN RAILWAY COMPANY, Appellant.

**MASTER AND SERVANT:** Negligence—Proximate Cause—Proof
1 **Required.** Proof of proximate cause—causal connection between negligence alleged and injury suffered—is sufficient if the facts and circumstances show that it is *more probable* that the injury occurred because of the negligence alleged than from some other cause.

PRINCIPLE APPLIED: On a dark, rainy night in January, an electric locomotive, moving eastward with two cars, approached a switch, preparatory to switching the rear car to a side track to the north of the main line. This rear car was a furniture car, higher than ordinary cars, and had two ladders at the southeast corner, one on the side and one on the end. To the right of the end ladder and 18 inches from the top of the car was a shelf, 3 feet long and 6 inches wide, and through this, the brake shaft extended upward 18 inches above the car, at a point equally distant from the center of the car and the south side. The side track curved convexly to the north. The trolley wire was not over the center of the switch track. For two weeks, it had been allowed to sag so far to the south that, owing to the curve in the track, it would hit the brake shaft of this high car after the car had moved down the switch track about 150 feet. This was the negligence alleged. When last seen, deceased, with his lantern, was half way to the top of the car on the side ladder. The deceased uncoupled his car, and the engine and remaining car passed down the main track, while the switched car passed upon the switch track. The deceased could have worked the uncoupling lever either from the side of the car or *by stepping around to the end ladder.* After uncoupling, it was his duty to go to the top of the car and stop the car at an elevator. Deceased was 5 feet, 6 inches tall.

His dead body was found, a few minutes later, in the middle of the track, about 150 feet from the switch. There were no burns on the body or clothing. The lantern carried by deceased was found 300 feet from the body, in the west end of a sand car with which the furniture car came in contact.

*Held,* the theory that deceased went to the top of the car *in the performance of the intended duty*, there set down his lantern, and was later swept from the car by the sagging trolley wire, was more probable than that he was on the end ladder when he uncoupled, set his lantern on the end shelf, and, without reaching the top, fell because of the slippery condition, or from some cause · other than the trolley wire.

**NEGLIGENCE:** Proximate Cause—No Eyewitnesses—Performance 2 **of Duty—Presumption.** In the search for the proximate cause of the death of an employee through a transaction of which there were no eyewitnesses, the presumption that deceased, at the time of his death, was performing the duty which he had concededly just started to perform, becomes very persuasive when, if deceased was performing such duty, he would be exposed to the very negligence alleged as a basis for recovery.

PRINCIPLE APPLIED: See No. 1.

*Appeal from Polk District Court.*—Lawrence DeGraff, Judge.

Saturday, March 11, 1916.

Action for the recovery of damages for death of plaintiff's decedent. There was a trial to a jury, and a verdict and judgment for plaintiff for $4,000. Defendant appeals.— *Affirmed.*

*Parker, Parrish & Miller,* for appellant.

*A. B. Schuetz* and *Bowen & Alberson,* for appellee.

Preston, J.—The negligence charged was substantially that the trolley wire, which was suspended above the track, and through which was transmitted the electricity which furnished the power to move the train, was too low, so that one riding on the car might come in contact with it and be pushed off, or receive a shock which would throw him from the car.

There was evidence that this trolley wire was so low that a person on the furniture car could come in contact with it. There was no evidence of any burns upon the body or clothing of deceased. No one saw the immediate transaction, or testified as to just how the accident occurred.

It is appellant's contention that it is as probable that deceased slipped and fell from the car, or was in some other way thrown therefrom, as that he was pushed off by the wire. The one question relied upon by appellant for

1. MASTER AND SERVANT: negligence: proximate cause: proof required.

reversal is this claim as to whether the evidence was sufficient to go to the jury and to sustain the jury's finding and to show that the negligence was the cause of the injury, or the proximate cause thereof. Proof of the defective condition of the wire, or that it was too low, and of the death of intestate, due to his being run over by the car, would not be sufficient. That is to say, the burden of proof was upon plaintiff to show, either by direct or circumstantial evidence, causal connection between the alleged negligence and the injury complained of. If the facts are as consistent with one theory as another, plaintiff has not met the burden. The evidence must be something more than consistent with plaintiff's theory as to how the accident occurred. A preponderance of the evidence is sufficient; and if it is more probable that it happened in the manner alleged by plaintiff than in some other way, the proof is sufficient. *O'Connor v. Chicago, R. I. & P. R. Co.*, 129 Iowa 636.

Appellant's proposition, and the cases cited to support it, is this: A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature and are so related to each other that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the theory. *Asbach v. Chicago, B. & Q. R. Co.*, 74 Iowa 248; *Daugherty v. Chi-*

cago, M. & St. P. R. Co., 87 Iowa 276; Wheelan v. Chicago, M. & St. P. R. Co., 85 Iowa 167; Kennedy v. Chicago & N. W. R. Co., 90 Iowa 754; Kling v. Chicago, M. & St. P. R. Co., 115 Iowa 133; Neal v. Chicago, R. I. & P. R. Co., 129 Iowa 5; Gibson v. Iowa Cent. R. Co., 136 Iowa 415; Klumb v. Iowa State Trav. Men's Assn., 141 Iowa 519.

Appellee contends that the theory of the defendant in this case is not supported by evidence equally probative with that supporting the theory of plaintiff, and that, from the facts shown in the record, the only reasonable conclusion that could be reached was that the low suspended wire negligently maintained by defendant was the proximate cause of the injury to plaintiff's decedent, and that plaintiff is not required to negative every other possible cause or every conceivable theory that ingenuity might invent, and cites Gordon v. Chicago, R. I. & P. R. Co., 146 Iowa 588, 594; Lunde v. Cudahy Packing Co., 139 Iowa 688, 702; Bonjour v. Iowa Telephone Co., (Dec. 18, 1915. Rehearing denied May 2, 1916). They also cite Brownfield v. Chicago, R. I. & P. R. Co., 107 Iowa 254, 258, the Bonjour case, supra, and Lehman v. Minneapolis & St. L. R. Co., 153 Iowa 118, 124, to the proposition that, when a cause is shown which might produce an accident in a certain way, and the accident happens in that manner, it is a warrantable presumption, in the absence of showing of other causes, that the one known was the operative agency in bringing about the result. But the point here is whether plaintiff has shown that the accident did happen in the manner she claims. In the Lehman case, supra, in commenting upon the cases cited in support of the doctrine contended for by appellant, the court said:

"Counsel rely upon a number of cases in which this court has held that the burden is upon the plaintiff, in an action to recover for injuries due to the alleged negligence of the defendant, to show a causal connection between such alleged negligence and the injury, and that it is not sufficient to show that the negligence might have caused the injury, if the cir-

cumstances indicate an equal probability that it was due to some other cause.''

The question presented, then, in this case is as to whether or not the theory advocated by appellant is equally probable with that contended for by appellee.

It is necessary to refer to some of the more important facts. There is no dispute as to some of the facts. As to others, there is a conflict. The accident in which plaintiff's decedent was injured and killed occurred on the night of January 20, 1913, at a siding known as Tucker Station, between Des Moines and Colfax. The accident occurred on a dark, rainy night, while the train crew were attempting to drop a certain Union Pacific furniture car onto the siding at Tucker Station. The Union Pacific car, in connection with which the accident occurred, was the second car from an electric locomotive. There was a ladder at the side, and also at the end of the car, and a platform about 3 feet long and 6 inches wide extended from the east end of the car at a point about 18 inches below the top of the car, from which the brake staff extended. The brake stand was on the east end of the car, about half way between the center of the car and the south edge. To reach this brake stand, it is necessary for the brakeman to go up to the top of the car. The brake staff extends about 18 inches above the top of the car. Deceased was 5 feet, 6 inches tall. The Union Pacific car was higher than the ordinary freight car. At a point about 150 feet east of the west switch, the trolley wire, suspended above the track on the siding, was so low that the same would and did come in contact with the brake staff of the Union Pacific furniture car on which deceased was riding. The wire was not in the middle of the track, but sagged towards the south rail. This sagging condition, together with the location of the poles to which the wire was attached, and the curve in the track, caused it to extend almost across the track from the point of attachment, near the north rail, from northeast to southwest, in such a manner that an object of sufficient eleva-

tion moving along the track would come in contact with it. On the day following the accident, one Schraub, then employed as a conductor for the defendant company, was ordered from Colfax to Tucker, to make a test. With him were the superintendent of the company, an attorney and another. There was a train made up at Tucker Siding, and the Union Pacific car in question was dropped into the siding for the purpose of making the test. The train crew consisted of the same parties who composed the crew at the time of the accident, except that Mr. Schraub served in place of deceased. When the test was being made, the Union Pacific car was pulled in by the electric locomotive to which the trolley is attached which supported the trolley wire on the siding; and when the east end of the furniture car had reached a point 150 feet east of the west switch, the trolley wire was 2 or 3 inches above the brake wheel. After the trolley had been removed, the wire came in contact with the brake wheel. The conditions existed for about two weeks prior to the accident. At the time of the accident, the Union Pacific furniture car was dropped into the siding, and the electric locomotive did not go onto the siding until after the accident, and there was no trolley to support the wire. The train crew consisted of Conductor Hunt, Motorman Reilly, a head brakeman, and the deceased, who was the rear brakeman. The conductor and deceased were riding in the caboose, while the motorman and head brakeman were riding in the electric locomotive.

There was evidence from which the jury could have found that, on the night of the accident, the train approached the siding at Tucker from the west, and stopped with the locomotive west of the west switch, for the purpose of dropping the Union Pacific car through the west switch into the siding, which was on the north side of the main line. The train was cut at the west end of the furniture car, and the go-ahead signal was given by deceased. As the furniture car approached the switch, the deceased, who was then on the side of the car, about half way up, uncoupled the furniture car from the car

ahead of it. The uncoupling could be accomplished from the side of the car. Had deceased stepped around at the end of the car, he could, with either his foot or his hand, have pushed down the uncoupling lever. After the uncoupling was accomplished, it was the duty of deceased to go up on top of the car and ride it in on the siding and stop it at the elevator. When the locomotive passed the switch point, the head brakeman turned the switch so as to throw the furniture car onto the side track. After this car had been thus turned in on the side track, the locomotive then backed up west of the west switch point, in order that it might come in onto the siding. The switch was again thrown, and the locomotive again proceeded east on the siding; when, at about 150 feet east of the west switch point, and approximately beneath the point where the trolley wire came in contact with the brake staff, the body of deceased was discovered lying between the rails. The furniture car in question, on which, prior to the accident, deceased was riding, moved about 300 feet farther east on the siding, until it came in contact with a carload of sand. In the west end of the car of sand was found the lantern of deceased, the light from which had last been seen on the side of the furniture car at the east end, about half way to the top, which was after the go-ahead signal had been given. From these facts, the jury found that the deceased came in contact with the trolley wire, and returned a verdict for the plaintiff.

It is conceded by appellant that the last seen of deceased was when he was on the side of the car when he gave the go-ahead signal. No one saw him after the signal was given. The last known of him is that he pushed down

2. NEGLIGENCE: proximate cause: no eye-witnesses: performance of duty: presumption. on the lever and uncoupled the Union Pacific car from the car ahead of it, and rode the Union Pacific car in on the sidetrack to the point where his body was found. It is true there is no direct evidence as to whether he rode on the side ladder, the end ladder, or on the top of the car. It is shown

that the Union Pacific car traveled several car lengths east of where the body was found, where it collided with an open car loaded with sand, and, as stated, the lantern of deceased was found in this car of sand. The inference is that, before the accident happened, deceased set his lantern either on top of the car or on the little platform at the end of the car where it rode until it collided with the car of sand. Appellee argues from this that the lantern must have been on top of the car, and, therefore, in order to get it there, and in order to be prepared to manipulate the brake on the car at the proper time, deceased must have gone to the top of the car. Appellant's position is that the fact that the lantern rode the car until it struck the sand car does not tend to prove that deceased reached the top of the car, because it is just as reasonable to assume that he reached up and set his lantern on the little platform at the end of the car, either before or after he uncoupled the furniture car from the car ahead of it, and that he slipped and fell from the car on account of the wet and slippery condition due to the rain, or some other cause.

Appellant further argues that, after the deceased gave the go-ahead signal from the side of the car, he could have stepped around on the end ladder and set his lantern on the platform, which would be just above his head, and then, either with his foot or his hand, have pushed down the uncoupling lever; that, if he had used his hand to do this, it would have been almost necessary for him to have first disposed of the lantern, as he would have had to hang onto the car with one hand and manipulate the lever with the other. Or that he may have uncoupled the car, started to climb up the side or end, and when his head reached the platform at the end of the car, he may have set his lantern upon the platform before he continued to climb up and stand upon the platform or to manipulate the brake; that it was necessary for him to set the lantern somewhere while he was manipulating the brake; and that the ordinary thing for him to do would be to set the

lantern on the platform, as soon as he got high enough to reach it.

But we think this theory is not as probable as that advanced by appellee, because the evidence shows that deceased started out to perform the duties of a rear brakeman in dropping the car into the siding; that he uncoupled the Union Pacific car from the rear portion of the train; that he got upon the ladder at the side of the car at the east end; that he gave the go-ahead signal; that he uncoupled the car from the front or east portion of the train, which uncoupling could be performed from the side ladder; that it was his duty to go up on top of the car to set the brake; that, if he performed his duty and did go on top of the car, he would come in contract with the wire at a point approximately above the point where his body was subsequently found between the rails, and this was more than 150 feet from where the last uncoupling took place to the point where the body was found, the last uncoupling having been completed at some point west of the west switch, thus affording ample time for Avise to have reached the top of the car and set his lantern down,. preparatory to setting the brake; that his lantern rode on the car from where his body was found to the carload of sand, a distance of some 300 feet from where the accident occurred; that the lantern could only ride that distance on the top of the car, or on the brake stand, and to reach this brake stand, it was necessary to go to the top of the car.

After a careful consideration of the record, our conclusion is that the evidence is sufficient to support the finding of the jury. The judgment of the district court is, therefore— *Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.