ALICE BOLES, Administratrix, Appellee, v. HOTEL MAYTAG COMPANY, Appellant.

No. 42255.

March 13, 1934.

Rehearing Denied June 23, 1934.

Huebner & Huebner, H. B. White, and M. R. Hammer, Jr., for appellant.

Campbell & Campbell, for appellee.

Kintzinger, J.—The decedent, Charles W. Boles, who was engaged as an independent contractor in furnishing certain electrical supplies and service for the Maytag Hotel of Newton, Iowa, met his death by falling into the pit of an elevator shaft in the Maytag Hotel, on the evening of January 9, 1932. On that date he was furnishing certain electrical equipment and service in one of the rooms on the fourth floor for the hotel. He had performed similar work on former occasions, but had not been so engaged for about two months prior to January, 1932. He had been working on his present contract about two days. The decedent and two workmen for another contractor used a freight elevator in the east side of the building that evening in going to and from the fourth floor. Arrangements had been made for their use of the elevator that evening. Various employees of the hotel, draymen, guests, and others had, at various other times, also used the same elevator. The elevator connected with six floors of the building, with an inside door on

each floor opening into the west side of the elevator, and one outside iron door on the first floor opening on the alley on the east side.

All of the inside doors, at the time in question, were equipped with a circuit cutting safety device which prevented the elevator from moving when any of these doors were open. The outside door was also originally equipped with a similar safety device, which also prevented the elevator from moving when any of the doors were open. The devices for all the inside doors were in use and operation on January 9, 1932, but the one for the outside iron door was not in use or operation that day, and had not been for over two years prior thereto. It then became out of repair, was partially removed, and had never since been repaired or replaced. The outside door opening into the alley was a large iron roller door and was opened by pushing it up.

The negligence charged against the defendant as causing Boles death was: That the safety device for the outside door was negligently and carelessly allowed to become and remain out of repair and inoperative.

Mr. Lynch and another paper hanger were working in the same room with decedent that evening. At about 9:30 Boles left the hotel and went to his shop over a block away to get some electrical equipment for the room on the fourth floor. Mr. Lynch, another workman, and the manager of the hotel were in the room when Mr. Boles left. Mrs. Boles says that her husband returned to the shop at about 9:30 that evening for some electrical material. After getting what he came for, he left the shop for the hotel at ten minutes to 10. He was next seen about 10:30 p. m. lying unconscious in the pit of the elevator shaft.

Mr. Lynch says he left the room on the fourth floor at about 9:45 or 10 o'clock to get the elevator to go to the lower floor to get a glass from Mr. Dietz, the night engineer. Mr. Boles left his shop at ten minutes to 10. When Lynch went to the elevator it was on the lower floor, and he pushed the button to bring it up. While pushing the button he heard something like a door being closed on the lower floor, and at the same time he noticed that the elevator hesitated. He kept pushing the button, however, and the elevator came on up. He then went down on the elevator, and when he reached the first floor he found the outside iron door open about three and a half feet from the bottom. There was a strong wind blowing, and he pushed the door down further. He then walked

down and got a glass from Mr. Dietz and took the elevator back to the fourth floor. About fifteen or twenty minutes later Mr. Dietz heard a moaning sound from the bottom of the elevator pit, where he then found Mr. Boles. A doctor was immediately summoned, who found Boles still moaning and groaning. Boles was then in extreme shock and unconscious. His body was cold and clammy; his lips were blue and his pupils dilated. He died about 6:15 the next morning. He had a number of body injuries, broken ribs on both sides of his chest and a fracture of the collar bone with the bone dislocated, bruises on his face, body, and right hip. There was a swelling over the right collar bone and shoulder. His pulse was irregular at about 36 and indicated a concussion of the brain. There was a hole in one of his rubbers, a button off his coat, and marks on his hat and coat, all of which were not there when he left the shop.

Mr. Boles was in good health, and had been engaged in electrical work seventeen years, and was an expert electrician. During the time the safety device for the outside iron door was inoperative and out of repair, Mr. Boles used the elevator at various times when doing other electrical service in the hotel. The witness Dietz testified that some time in the late summer or fall of 1931 he said to Mr. Boles:

"I suppose you know as much or more than I do about· this, but I am going to tell you anyway that this circuit breaker is not working and we usually open the west door in loading from the alley. When I said the circuit breaker was not working I pointed to the device and showed him what it was. At that time we were standing on the ground floor. * * * I told him how it operated, that by opening the west door (the inside door) that held the car while we were loading from the alley."

Nicholson, a decorating contractor, rode in the freight elevator with Mr. Boles five or six times, and saw him operate it several other times. At such times the outside and the inside doors were both open. He said Mr. Boles always closed the outside door before the inside door, because the elevator would not start until the inside door was closed. Other witnesses saw Mr. Boles using the elevator at various times after the safety device on the outside door was out of repair. It is conceded that, when Boles left the hotel for his shop that evening, he closed the outside elevator door.

I. There were no eyewitnesses to the manner in which decedent fell into the elevator shaft, but the defendant contends that, if the manner of his falling into the shaft is, by circumstantial evidence, equally explainable upon a theory of *no* liability, as upon a theory *of* liability, then there can be no recovery. The law is well settled that, where the cause of an injury is based upon circumstantial evidence, which is equally as consistent with a theory of *no* negligence as with a theory *of* negligence, plaintiff cannot recover. Hall v. C., R. I. & P. R. Co., 199 Iowa 607, 199 N. W. 491; O'Connor v. C., R. I. & P. R. Co., 129 Iowa 636, 106 N. W. 161; Tisher v. Union Pac. R. Co., 173 Iowa 567, 155 N. W. 975; Tibbitts v. Mason City & Ft. Dodge R. Co., 138 Iowa 178, 115 N. W. 1021; Asbach v. C., B. & Q. R. R. Co., 74 Iowa 248, 37 N. W. 182. This doctrine, however, is not to be extended so as to result in a failure of justice, and it is only where the evidence shows probabilities equally supporting a theory of *no* negligence as a theory *of* negligence that there is no liability.

But if the circumstances supporting a theory *of* negligence are of greater weight than the evidence supporting the theory of *no* negligence, then it becomes a question of fact for the jury to determine whether or not the cause of the injury was the negligence alleged. A person is not required to prove his theory of negligence by testimony so clear as to exclude every other possible theory. Duncan v. Ft. Dodge Gas & Electric Co., 193 Iowa 1127, 188 N. W. 865; Hall v. C., R. I. & P. R. Co., supra; Swaim v. C., R. I. & P. R. Co., 187 Iowa 466, 174 N. W 384; Gordon v. C., R. I. & P. R. Co., 146 Iowa 588, 123 N. W. 762; Paulson v. Bettendorf Axle Co., 146 Iowa 399, 125 N. W. 174; Huggard v. Refining Co., 132 Iowa 724, 109 N. W. 475; Lunde v. Cudahy Packing Co., 139 Iowa 688, 117 N. W. 1063; Breen v. Iowa Central R. R. Co., 163 Iowa 264, 143 N. W. 846; Avise v. Interurban R. Co., 174 Iowa 592, 156 N. W. 807; George v. Iowa & Southwestern R. R. Co., 183 Iowa 994, 168 N. W. 322; Woodard v. C., R. I. & P. R. Co., 193 Iowa 516, loc. cit. 525, 185 N. W. 978; Sever v. Minneapolis & St. Louis R. Co., 156 Iowa 664, 137 N. W. 937, 44 L. R. A. (N. S.) 1200; Schoepper v. Hancock Chemical Co., 113 Mich 582, 71 N. W. 1081.

In Duncan v. Fort Dodge Gas & Electric Co., supra, loc. cit. 1133, this court, speaking through Justice Weaver, said:

"Appellant makes the point that, to sustain plaintiff's charge

of negligence by circumstantial evidence, the circumstances shown must be such as are wholly inconsistent with any other reasonable theory of the death of the deceased. It may be admitted that cases are to be found, and possibly some of our own, in which the rule is stated as quoted by counsel. It is nevertheless a misleading statement as applied to disputed facts in a civil action. In its broadest sense it has no proper application, except in criminal cases where the evidence relied upon to establish the alleged crime is purely circumstantial. As applied to a civil action for damages for negligence, it goes no farther than to declare that, if the circumstances relied upon to sustain the allegation of negligence are *equally consistent* with the theory of due care by the defendant, then plaintiff must fail. To state it in the form contended for by appellant would be to hold that to sustain a finding of negligence on circumstantial evidence the plaintiff's proof must be such as to exclude all reasonable doubt,—a proposition without support in principle or well-considered precedent. The true rule has nowhere found better or clearer expression than is given by the Michigan court in Schoepper v. Hancock Chemical Co., 113 Mich. 582, 71 N. W. 1081 * * * Lunde v. Cudahy Packing Co., 139 Iowa 688, loc. cit. 700."

In Woodall v. Boston Elevated R. Co., 192 Mass. 308, 78 N. E. 446, 448, the court said:

"The plaintiff was not bound to exclude the possibility that the accident might have happened in some other way, but only to satisfy the jury by a fair preponderance of the evidence that it occurred in the manner in which he contended that it did."

Two theories are advanced for the cause of decedent's falling into the elevator shaft. One is that advanced by the plaintiff under which it is claimed that, after Mr. Boles returned from his shop, he raised the outside elevator door and stepped into the cage of the elevator, and that, while in the act of pushing down the door, the elevator was suddenly raised by the workman Lynch on the fourth floor, causing decedent to lose his balance, and fall on the edge of the elevator floor from where he was pushed into the opening between the floor and the iron door, when the floor of the elevator reached the top of the door, thus precipitating him into the elevator shaft.

The safety device originally provided for the outside door was defective, had been partly removed, was inoperative at the time in

question, and had been for over two years. While the safety device was out of repair and inoperative, the elevator could be moved regardless of whether the outside iron elevator door was open or not, provided all of the inside elevator doors were closed. If this safety device had been maintained in good working order, the elevator could not have been moved by any one on the fourth floor while the lower outside door was open. It is therefore contended by plaintiff that the cause of the decedent's death was the result of defendant's negligence in failing to provide a proper safety device for the outside door.

Defendant's theory is that, when decedent returned to the hotel from his shop, the elevator cage was not there, and that, after opening the elevator door, he either stepped or slipped into the elevator shaft in attempting to enter the elevator cage. The elevator cage was provided with an electric light which was lit before Boles went down on the elevator and was still lit after he was found in the bottom of the shaft. That if the elevator cage was not on the ground floor when Boles opened the door, the absence of the light and the cage must have been seen and known to Boles when he opened the door and attempted to enter the elevator. Defendant claims that this theory of decedent's fall is equally probable with that advanced by plaintiff, and under it no recovery can be had.

II. Defendant contends that its motion for a directed verdict should have been sustained because the evidence failed to show that decedent was free from contributory negligence as a matter of law.

Assuming for the purposes of this branch of the case that plaintiff's theory as to the cause of decedent's fall into the elevator shaft was sustained by sufficient evidence we are confronted with the question of whether or not there was sufficient evidence to take the question of plaintiff's contributory negligence to the jury.

Plaintiff contends that, where there are no eyewitnesses to an accident, there is an inference or presumption of due care on the part of the person injured. This rule is correct in the absence of all evidence, but, where it appears from the physical facts in a case that the person injured could not have been in the exercise of ordinary care, then the rule does not apply. 45 C. J. 947; Sohl v. C., R. I. & P. R. Co., 183 Iowa 616, 167 N. W. 529; Stark, Adm'x, v. Tabor & Northern R. R. Co., 161 Iowa 393, 142 N. W. 977; Tegtmeyer v. Byram, 204 Iowa 1169, 216 N. W. 613; Page v. New York Realty Co., 59 Mont. 305, 196 P. 871; Cutler v. Kolb Bakery Co.,

273 Pa. 59, 116 A. 518; Massey v. Seller, 45 Or. 267, 77 P. 397; Seaver v. Weston, 163 Mass. 202, 39 N. E. 1013.

In Stark v. Tabor & Northern R. R. Co., supra, we said:

"Moreover, this presumption will not obtain, if the direct evidence or the physical facts show that the injured party was not in the exercise of the degree of care required of him when struck."

In Tegtmeyer v. Byram, supra, loc. cit. 1175, we said:

"The presumption obtaining in favor of a deceased, when there are no eyewitnesses, is not applicable, because, on the physical facts and undisputed evidence, the collision would have been avoided, if decedent had made such reasonably prudent use of her faculties of observation as her knowledge of the surroundings and the evidence of danger from the presence of the track warned her to make."

It is the settled rule of law that in this character of actions the burden is upon the plaintiff to show his freedom from contributory negligence. If, therefore, the evidence offered by plaintiff does not tend to show that he was free from any negligence on his part, contributing to the accident, there can be no recovery. We recognize the rule that the questions of negligence and contributory negligence are ordinarily for the jury. But it is also the rule that if, under the evidence offered, it appears without conflict that the plaintiff was guilty of contributory negligence, there can be no recovery as a matter of law.

"Under the legal system of most English speaking jurisdictions, the contributory negligence of an injured person is a bar to any recovery for injuries. Every person, whether a trespasser, licensee or one present by invitation, when using an elevator as a means of travel or when in proximity to an elevator or elevator shaft, is bound to exercise reasonable care for his own safety." 9 R. C. L. 1257, section 23; Patterson v. Hemenway, 148 Mass. 94, 19 N. E. 15, 12 Am. St. Rep. 523.

"It is also the rule that notice or warning is not necessary where the danger is obvious, or the person injured has actual knowledge thereof, or where, on account of the obviousness of the situation and the use of the property for a considerable time by the person injured, the owner has a right to believe that the injured person is fully acquainted with the situation and the risk." 45 C. J. 876, sec-

tion 306; Trainor v. H. A. Maine & Co., 184 Iowa 549, 168 N. W. 872.

"The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of his faculties of sight, hearing and intelligence to discover dangers and conditions of dangers to which he is or might become exposed." 45 C. J. 947.

In Page v. New York Realty Co., 59 Mont. 305, 196 P. 871, loc. cit. 878, the court said:

"From all of the affirmative proof introduced on the part of the plaintiff in this case, it seems clear that the decedent was not only guilty of contributory negligence, but that he was foolhardy to such an extent as to constitute gross negligence on his part. The burden rested upon the plaintiff to prove by a preponderance of the evidence that the negligence of the defendant was the proximate cause of the decedent's injury. Assuming the defendant guilty of negligence, from all of the evidence introduced it does not appear that the decedent, at the time of the accident, exercised due care for his own safety, and therefore a case for the jury was not made. Applying decisions of our court to the evidence introduced in this case, there is but one conclusion, and that is that carelessness and negligence of the decedent was a proximate cause of his injury and resultant death. His contributory negligence, under the evidence, is proper for decision as a matter of law, rather than one of fact."

In the case of Cutler v. Kolb Bakery Co., 273 Pa. 59, 116 A. 518, the court said:

"Plaintiff on his own testimony admitted that he was standing seven feet away from the opening into the elevator; that he had his back to the elevator; that he had been engaged for a few minutes previous in helping to load his truck with flour. He then says that he stepped backward those seven feet to the elevator and fell down the unguarded shaft, the elevator having been moved meanwhile by somebody unknown. The plaintiff further testified that he knew that the gates were not there, or that if they were there that they did not work, because he said he had been up there some ten or twelve times before over a period of about two months before this

accident happened, and therefore he knew the condition of the elevator, and knew therefore that if the elevator was moved there would be no gates there to protect a person."

In the case at bar, if the decedent knew of the absence of the safety device in question, and if he appreciated the danger likely to arise therefrom, and if such knowledge and appreciation are established by the evidence without conflict, then, as a matter of law, plaintiff cannot recover. As disclosed by the facts herein above set out, it appears that the decedent had used the elevator in question at numerous times during the two years prior to the accident in question, and had been engaged in furnishing electrical equipment and service for the hotel at various times during that period. He had been engaged in electrical work for over seventeen years, and was an experienced electrician. In furnishing electrical equipment and service for the defendant, he acted as an independent contractor.

Part of the safety device which had been out of repair and inoperative for over two years was located at the outside iron door on the ground floor. There was also an inside door on each floor opening into the elevator. Each of these doors, including the inside door leading from the elevator on the ground floor of the building, was equipped with a safety device. The safety devices on these doors were in operation. The evidence shows that, when any one of these inside doors was open, it was impossible to move the elevator. The outside iron door was on the east side, and the inside door was on the west side, of the elevator. The decedent used this elevator on numerous occasions; in operating it he usually opened the west inside door on the ground floor to prevent the elevator from being moved while loading it and while the outside door was open. The evidence shows that theretofore whenever he operated the elevator he closed the east door before closing the west door. Boles had used this elevator two months before January, 1932. In the late summer or fall of 1931, the engineer of the hotel said to Mr. Boles: "I suppose you know as much or more than I do about this, but I am going to tell you anyway, that the circuit breaker (the safety device) is not working, and we usually open the west door in case of loading from the alley. When I said the circuit breaker was not working, I pointed to the device and showed him what it was. At that time we were standing on the ground floor. * * * I told him how it operated, that by opening the west door (being the inside door) that held the car while we were loading from the alley."

The circuit cutting device when in operation cut off the power from the elevator when any of the doors were open. All of the inside doors were equipped with this safety device, and the decedent was familiar with its operation and effect. He also knew that the safety device for the outside door was out of repair and inoperative, and that while out of repair he knew that the elevator could be moved from one floor to another while the outside door was open. He was an expert electrician, and knew and appreciated, better than the manager of the hotel, that the elevator could be moved while the outside door was open, unless the inside door was also open. He well knew that, in order to prevent any one else moving the elevator while he was closing the outside door, it was necessary for him to open the inside door. This was the only precaution necessary to prevent the elevator moving while he was closing the outside door. When he left the room on the fourth floor that night, two workmen and the manager were still there. There were other employees and others in the building who might use the elevator any time, and Boles knew that, if they did so, the elevator could or might be moved while the outside door was open. We believe the evidence in this case shows without conflict that the decedent at the time he met his unfortunate death must have known and appreciated the danger likely to arise from the use of the elevator with a defective safety device on the outside door at that time. If he had used the ordinary precaution of opening the inside door of the elevator until he had closed the outside door, the unfortunate accident would not have occurred. He knew that unless he did so the elevator could be moved. His failure so to do contributed to his injuries and death. For this reason we believe the lower court erred in failing to sustain the motion for a directed verdict.

III. Defendant also contends that the court erred in failing to direct a verdict because the decedent assumed the risk of defendant's alleged negligence. The decedent knew of the defective condition complained of, and fully appreciated the dangers likely to arise from the use of the elevator in that condition. In view of this knowledge it is a serious question whether he did not, as a matter of law, assume the risk of the negligence alleged. Under this doctrine, where one knows of a danger arising from the act or omission of another, and understanding the risk therefrom, he voluntarily exposes himself to it, he is precluded from recovering for an injury

resulting therefrom. Although this doctrine is usually applied in cases where the relation of master and servant exists, it has been applied where that relation did not exist. White v. McVicker, 216 Iowa 90, 246 N. W. 385; Fitzgerald v. Conn. River Paper Co., 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537; Gorman v. Brick Mfg. Co., 99 Iowa 257, 68 N. W. 674.

In view, however, of the conclusion reached on the question of contributory negligence, we deem it unnecessary to determine whether or not the doctrine of assumption of risk applies.

Other questions have been raised by defendant as grounds for reversal, but, in view of our conclusion on the question of contributory negligence, a consideration of them is unnecessary.

For the reasons hereinabove expressed, the judgment of the lower court is reversed.

CLAUSSEN, C. J., and ANDERSON, ALBERT, KINDIG, DONEGAN, and STEVENS, JJ., concur.

MITCHELL, J. (dissenting)—I find myself unable to agree with the opinion of the majority and respectfully dissent. The majority's opinion, as I read it, is based upon the question of contributory negligence. In view of the fact that there was a presumption that the decedent used due care, I think the question of contributory negligence was one for the jury, and I would affirm the decision of the lower court.