D. E. DAUGHERTY, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

1. **Railroads:** INJURY TO STOCK: CIRCUMSTANTIAL EVIDENCE. In an action to recover double the value of a colt alleged to have been killed on the defendant's right of way by a passing train, it was the contention of the defendant that the colt escaped through a gap between the right of way fence and that of the highway onto the highway crossing, where the defendant had no right to fence, and was killed. It appearing, however, from the evidence, that it was both natural and possible for the colt to have found its way to a pond in a neighboring field, where it was doubtless accustomed to drink, and that at such point it might have been induced, by the better grass then growing on the right of way, to pass through a defective place in the right of way fence, and that the excrement found upon the track indicated that the colt could not have been killed at the crossing, *held*, that a verdict for the plaintiff was supported by the evidence.

2. ——: ——: PLEADING: INSTRUCTION TO JURY. The plaintiff failed to allege in his petition that the colt was running at large at the time it was killed, but the petition was not assailed by the defendant by demurrer or motion in arrest of judgment. *Held*, that the defect of the petition was waived, and that as the question of the colt running at large was not in issue, the court was not required to instruct the jury in regard to it.

*Appeal from Wayne District Court.*—HON. W. H. TEDFORD, Judge.

WEDNESDAY, JANUARY 25, 1893.

ACTION to recover double the value of a colt alleged to have been killed by a locomotive engine of the defendant in consequence of a failure on its part to maintain a sufficient fence at a point on its railway

where it had a right to fence. There was a trial by jury, and a verdict and judgment in favor of the plaintiff. The defendant appeals.—*Affirmed.*

*McElroy & Roberts*, for appellant.

*Steele & Livingston*, for appellee.

ROBINSON, C. J.—The evidence shows that in the latter part of April, 1890, a colt owned by the plaintiff was killed on or near a road crossing; the plaintiff contending that it was killed on the railroad right of way a few feet west of the crossing, while the defendant contends that it was killed on the crossing, where it had no right to fence, and thrown by the engine onto the right of way where it was found.

I. The railway of defendant crosses section 19 in township 68 north of range 20 west from east to west, tending south of west, on the south half of the northwest quarter. There is a public highway on the north and west sides of the section, and a road thirty feet wide, fenced on both sides, on the south and east sides of the northwest quarter, which connects at each end with the public highway. At the angle made by the road in the northwest corner of the southeast quarter of the section is the barn lot of the plaintiff, in which the colt was kept, and from which it escaped the night it was killed. The narrow road extends from the center of the section at the lot northward across the railway, and that crossing is the place on or near which the colt was killed. The right of way of the defendant was fenced through the section, excepting at the crossing. The colt escaped from the lot, and was tracked in a northwesterly direction across a plowed field to a gap in the fence on the east side of the road, at its junction with the right of way fence, where the tracks were lost in the road. The defendant contends that the colt went

1. RAILROADS: injury to stock: circumstantial evidence.

from that gap onto the crossing a few feet away, and was there killed. The road at that point does not appear to have been established as a public highway, but it is not claimed that the defendant had a right to close it with a fence; therefore, if the defendant's theory in regard to the accident be correct, it is not liable for the killing of the colt.

The part of the south half of the northwest quarter of the section south of the right of way fence is inclosed with fences, and is subdivided into two fields by a fence which extends from the right of way fence southward to the road fence at a point about equidistant from the west line and from the center of the section. At the time of the accident, there was a gap in the fence on the west side of the road at its junction with the right of way fence near the crossing; there was a gap in the partition fence described at its junction with the road fence, and an open gate in the road fence near that gap. The east one of the two fields south of the right of way had been cultivated, and contained no grass. The west field was a pasture in which the colt had been kept with its dam the previous season. In the northwest part of that field was a pond of water. There was evidence tending to show that the fence on the west side of the road at the crossing was defective at the time of the accident, and that the right of way fence in the west field, especially where it crossed the pond, was defective, and in such condition that the colt could readily have gone through it and onto the right of way. Although there was some attempt on the part of the plaintiff to show that the fence of the defendant on the west side of the crossing and south of the cattle guard was defective, yet the evidence that the colt could have gone through it is slight, and but little reliance seems to be placed upon it. If the colt was killed on the right of way, it is probable that it went onto it from the west field, at or near the pond. When it left

the plowed field into which it escaped, and entered the road, it could have reached the fence at the pond by crossing the road, passing through the gap in the west fence opposite the one through which it entered the road, thence going in a direction south of west to the gap in the partition fence, thence across the pasture to the pond; or it could have gone southward along the road to the barn lot, thence westward along the road to the gate, through which it could have gone into the fields and to the pond. The distance by either route was a little more than one half of a mile. The distance from the pond along the right of way eastward to the crossing is not quite half a mile.

It is said to be unreasonable to suppose that the colt would have gone onto the right of way by either of the routes described, and that it is more reasonable to suppose that the colt went onto the crossing from the first gap, and was there struck by the engine. That it could have done so is evident, and, if there is nothing in the evidence to make it more probable that the colt was killed on the inclosed part of the right of way than on the crossing, the plaintiff must fail under the rule announced in *Asbach v. Chicago, B. & Q. Railway Co.*, 74 Iowa, 248, and followed in *Wheelan v. Chicago, M. & St. P. Railway Co.*, 85 Iowa, 167, and other cases, to the effect that a theory can not be said to be established by circumstantial evidence, unless it be the only one which can be fairly or reasonably deduced from the facts proved. It is not unreasonable, nor contrary to nature, to suppose that the colt went through the east field, or around by the road and through the gate into the pasture. Having gotten into the road it would be natural for it to pass along it to the barn lot, and from there along the road westward, which it had been accustomed to travel, through the gate to the pasture, with which it was familiar, and to the pond, at which, no doubt, it had been accustomed

to drink. Having reached that point, it might readily have been induced to pass through the defective place in the right of way fence by the grass which it appears was springing up and better on the right of way than in the pasture. When it found itself on the right of way, it would naturally go eastward towards the crossing, which was nearly in the direction of, and less than twenty-five rods from, its lot.

The defendant, as supporting its theory, relies largely upon the following facts: The tracks of a colt were found east of the cattle guard on the crossing, so made as to indicate that the animal which made them was going northward. No tracks were found west of the cattle guard. A report of an engineer, received by agreement as his evidence, which stated that at thirty minutes after eleven o'clock of the night of the accident his train, which was then going west, killed "one head of horned cattle" on a highway crossing two and one-half miles east of Buda, and that the animals came on the right-hand side just as the train reached the crossing. The colt was found dead about forty-five feet west of the cattle guard and fifteen feet south of the railway track. It had been struck by the engine on the left side of the head and neck and on the left shoulder.

It is shown on behalf of the plaintiff that about the time of the accident several colts were seen at the crossing, and that one of them belonged with a team which was used in plowing the field through which the colt of the plaintiff went to the first gap; that the wagon was left in the road near that gap, and the horses were fed there; that the team came down the road from the north to work, and returned the same way; that the colt that was killed was but one year and ten days old; that the ground west of the cattle guard was of such a character that the colt would have made no tracks in walking over it; that the crossing

was three and three-fourths miles east of Buda, and that there was a regular train running west, which was due at the crossing at half past 2 o'clock in the morning of the accident. A fact upon which the plaintiff chiefly relies is that at a point twenty-two feet west of the cattle guard, on the north side of the railway, was found a quantity of excrement which had evidently been forced from the body of the colt when it was struck by the engine. It is described as "in a stream six or eight feet long," extending in a direction east of north of the railway track. It is said by the appellant that it may have been caused by a collision of the engine with the colt at the crossing; but that theory is not in accord with the natural laws which govern such cases. The excrement must have been forced from the body of the colt at almost the moment the blow of the engine was received. The substance which was ejected from the colt no doubt partook somewhat of its forward motion as it was carried by or thrown from the engine, but the movement of the substance was principally northward, and it must have fallen to the ground but a few feet west of the spot where the colt was struck. It is at least very improbable, if not impossible, that the blow which expelled it could have been received east of the cattle guard, or thirty feet at least from where it fell to the ground. We think the jury were fully justified in finding that the colt was west of the cattle guard when it came in contact with the engine.

II. The court charged the jury as follows: "If you should find by the preponderance of the testimony that the colt in controversy was injured by the defendant and killed by its servants at a point where it had a right to fence, then you should find for the plaintiff, unless you further find that the defendant, at the point where said colt got upon its right of way, had a good and suffi-

2. ——: ——: pleading: instruction to jury.

cient fence." The appellant complains that this portion of the charge is erroneous in not excepting it from liability in case it should be found that at the time of the accident the colt was not running at large, within the meaning of section 1289 of the Code. It is well settled that a railway corporation is not liable in cases of this kind unless the stock injured or killed is at the time running at large, but the court failed to charge the jury in regard to that fact. The petition did not allege that the colt was running at large when killed, but no objection to the omission was made by any pleading in the case, nor by a motion in arrest of judgment. It is said that an objection was made in the form of an exception to the paragraph of the charge from which we have quoted, which was renewed in the motion for a new trial. It appears that a general exception was taken to that and other paragraphs of the charge when it was given, and that one of the grounds of the motion for a new trial was alleged error in giving each of the seven paragraphs of the charge; but there was no specific objection made to any portion of the charge, nor to any omission of the court to instruct more fully than it did. No instruction was asked by defendant. We are well satisfied that the charge of appellee that no claim that the court should have instructed the jury in regard to stock running at large was made in the district court is correct.

The defendant admits with much frankness that it did not assail the petition for the reason that, had it done so, the plaintiff would have amended, and avoided the objection. The failure to state that the colt was running at large when killed made the petition demurrable. Section 2650 of the Code provides that "when any of the matters enumerated as grounds of demurrer do not appear on the face of the petition, the objection may be taken by answer. If no such objection is taken it shall be deemed waived. If the facts

stated by the petition do not entitle the plaintiff to any relief whatever, advantage may be taken of it, by motion in arrest of judgment, before the judgment is entered." When the petition is demurrable, and no demurrer is filed, or when facts enumerated as grounds of demurrer do not appear on the face of the petition, and are not set out in the answer, and the defect in the petition is not presented by a motion in arrest of judgment, it will be deemed waived. *Linden v. Green*, 81 Iowa, 365. In this case, as the pleadings raised no issue in regard to the running at large of the colt when killed, it was not necessary for the court to instruct in regard to it, and the portion of the charge quoted was correct, as applied to the issues joined, and the facts as shown by the evidence. We conclude that the objection under consideration was waived in the district court, and can not be urged here; that the exception to the charge did not preserve the objection now made; and that, if the objection had not been waived, and had been duly preserved, yet the omission of the court to charge as it is now insisted it should have done is without prejudice, for the reason that the evidence shows without conflict that the colt was running at large when killed, and that fact was not in any manner questioned in the district court.

The evidence is sufficient to sustain the verdict, and the judgment of the district court is AFFIRMED.