C. H. KLING v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

115   133
141   523

115   133
143   550

Railways: SUFFICIENCY OF RIGHT OF WAY GATE: *Jury question.* A railway constructed, in its fence at a private crossing on plaintiff's farm, an ordinary slide gate, on ground sloping to the west, at which ends the gate was hung. Subsequently the projecting ends of the boards on the east end of the gate were partly destroyed by fire. There was no fastening on the gate, and witnesses testified that a slight move, or a little shake, would open the gate. Animals belonging to plaintiff were killed by a train during the night, and a gate which a witness testified was closed on the previous evening, was found swung open a few feet, and had hair on it, indicating that the animals had passed through. *Held,* that it was for the jury to determine

whether the gate was sufficient, and, if not, whether its insufficiency was the cause of the animals being killed.

EVIDENCE: *Instructions.* An instruction that the jury should inquire whether or not the circumstances in evidence "fairly and and naturally led to the conclusion" that plaintiff's stock opened the gate, and thus entered in defendant's right of way, was correct, and it was not necessary that the evidence must exclude every other reasonable hypothesis.

Review on Appeal: REFUSAL TO RE-OPEN CASE: *Discretion.* Where plaintiff closed his testimony before adjournment on the first day, but in the morning was permitted, over objection, to examine another witness, and the defendant closed just prior to the noon adjournment, after which the court refused to allow him to examine another witness for the purpose of impeaching plaintiff's last witness, such refusal was not such plain abuse of descretion as to cause a reversal.

*Appeal from Wapello District Court.*—HON. ROBERT SLOAN, Judge.

THURSDAY, DECEMBER 19, 1901.

ACTION to recover double damages, under the statute, for the killing of two colts and one jenny, by one of defendant's trains. Verdict and judgment were rendered for plaintiff, and defendant appeals.—*Affirmed.*

*Jaques & Jaques* and *J. C. Cook* for appellant.

*Steck & Smith* for appellee.

GIVEN, C. J.—I. There is no question but that the animals were killed by defendant's train at a place where defendant had a right to fence; that said animals escaped from an adjoining pasture, where they were kept, through a gate placed by defendant in its right of way fence, at a private crossing on the farm occupied by plaintiff, or that the proper notice and affidavits were served. The "contention of the defendant is that there is no evidence tending to show that the gate was insufficient, or, even if the jury were authorized to find that it was insufficient, that

there is no evidence tending to show that such insufficiency in any wise caused or contributed to the destruction of the stock." At the place under notice the defendant's track and fence were east and west, and the gate in question was in the south fence, at a point where the ground slopes to the west and south. The gate, as originally constructed, was an ordinary sliding gate, made of 4 fence boards, 16 feet long, bound together at proper intervals by a cross strip at each end and one in the middle. It was hung to slide to the west, on a slight incline, between two posts, on a cleat nailed to these posts, under the top board of the gate. The cross strip at the west end was nailed to the boards at the end thereof, the strip across the east end was set back from the ends of the boards, so as to leave a projection beyond the strip to be passed between the two posts at that end, and to rest upon a cleat on the posts, under the second board from the top. Owing to the slope of the ground to the west, the east end of the gate, when closed, rested upon the ground, while the west end was several inches above the surface, and rested on the cleat under the top board. The gate as originally constructed was provided with a hook and staple at the east end for fastening it, and there is no question but that, as originally constructed, it was in all respects a sufficient gate. Prior to the killing of the animals the gate had been impaired by fire that burned off the east end of the three upper boards, so that the one next the bottom board only projected 22 inches, the next above 10 inches, and the top board 13½ inches beyond the cross strip, as shown by the gate exhibited on the trial. It then showed that the lower board projected 26 inches and had not been burned. There was evidence tending to show that the lower board on the gate, at the time of the fire, had also been burned, and that this lower board had been placed upon the gate since the killing of the animals. The east end of the board next to the top one, being the one that rested on the cleat, was burned off so as to round the end from the under to the upper edge

in the shape of a sled runner, as a witness aptly described it, the curve extending back on the lower edge of the board as far as the cross piece. In refitting the gate after the fire, these ends were left as we have described them, and the gate was not provided with a hook and staple or other like fastening. The animals were killed in the night, and next morning the gate was found pushed back three to four feet to the west, and swung south into the pasture one to two feet, and there was hair on the east end of the gate, indicating that the animals had passed through the opening. One witness testifies that the gate was standing closed the evening before. Defendant's section foreman, Mr. Donahue, testified: "I experimented to see what the gate would do when shoved back so as to loosen the east end. When it came far enough to let the two top boards out of the post, it leaned over into the pasture, the east end of the lower board rested on the ground, and the west was about $5\frac{1}{2}$ inches above the ground. I think the fall of the ground from east to west across the gate is 10 or 12 inches." From this it will be seen that the gate was hung with an incline to the west of 5 or 6 inches. The plaintiff testified: "It would take but a slight move to open the gate when it was closed. The gate goes right down the hill. Just a little shake will open the gate when it is not hooked. I saw it tried or tested—By shaking that gate it would move back; just by shaking it after it got on the ground. There was fall enough to shake that gate down the grade after it was on the ground. Just shake it backwards and forwards." We think it was for the jury to determine whether this gate, as it was at the time the animals were killed, was a sufficient gate for that place, and, if not, whether its insufficiency was the cause of the animals being killed, and that, upon these questions, the jury was warranted in finding as it did. Appellant cites *Bothwell v. Railroad Co.,* 59 Iowa, 192, as supporting its contentions. We agree with the conclusions in that opinion that "verdicts must have evidence to support them, and must not be founded

upon mere theory or supposition," but we think in this case there is evidence to support the verdict. In that case the gate was found to be sufficient in its construction and fastenings, and to be the kind of gate "ordinarily used and considered good." There was no claim that the gate was liable to be opened by the wind or by animals rubbing against it. It does not appear that that gate was hung upon sloping ground, nor at an incline, or that it had been impaired by fire. The minority say: "Evidence was introduced tending to show that the gate does not rest on the ground, but slides on a rest between two posts, that it could be opened without raising it up, and that the strength of a good silk thread would open it,"—and conclude that the jury was authorized to find that it was opened by the animals. The facts are so dissimilar as that the *Bothwell Case* is not controlling. *Asbach v. Railway Co.*, 74 Iowa, 248, is also cited, wherein it is said: "A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, simply, with that theory, for that may be true and yet they may have no tendency to prove the theory." Applying this rule to the evidence in this case, we think the only conclusion that can fairly or reasonably be drawn therefrom is that, owing to the impaired condition of the gate, the incline at which it was hung, and the absence of a hook and staple, or like fastening, it was an insufficient gate, and was opened by the animals rubbing against it. The same may be said of *Wheelan v. Railway Co.*, 85 Iowa, 167; *Koenigs v. Railway Co.*, 98 Iowa, 569, also cited, is unlike this case, in that the jury found that the night before the gate was "properly closed and fastened," while in this case the jury was authorized to find that, owing to the incline, the condition of the gate caused by fire, and the absence of a hook and staple, this gate was not properly fastened. In

that case the gate was found wide open,—wide enough, as one witness says, to let a load of hay go through, a condition that could hardly have been brought about by the animals rubbing or pushing against the gate. In *Mears v. Railway Co.,* 103 Iowa, 204, "there is no evidence that the gate was defectively constructed, was out of repairs, or that any other fastening than placing the ends of the boards between the posts was required or used on such gates." In this case there is evidence that the gate was out of repair and that, owing to its incline, other fastenings than placing the ends of the boards between the posts was required. It is said in that case, "There is no evidence of want of ordinary care on the part of the defendant;" but that cannot be said on this. We conclude that the jury was authorized to find that the gate was insufficient, and that such insufficiency caused the destruction of the animals.

II. The plaintiff closed his testimony before the adjournment of the court on the first day, and upon the convening of court next morning was permitted, over defendant's objection, to call and examine another witness, following which the defendant introduced its evidence, and closed, just prior to the noon adjournment. Upon the coming in of court for the afternoon session defendant offered the testimony of a witness to impeach the one who had been so permitted to testify after the plaintiff rested, and the court, upon the objection of the plaintiff, excluded this impeaching testimony, and of this the defendant complains. While we think, under the circumstances, the court might well have permitted the defendant to introduce this testimony, yet such matters are left to the discretion of the trial court, and will not be interfered with, except where there is a clear abuse of that discretion. We cannot say that there was such abuse of discretion in this instance as would warrant us in interfering with the verdict and judgment on that ground.

III. The eighth instruction given by the court is as

follows: "There is no direct evidence that the stock did open said gate and enter upon defendant's right of way, and hence it is your duty to inquire whether or not the circumstances in evidence in relation thereto are such that, when taken and considered together, that they fairly and naturally lead to the conclusion that said stock did open the gate in question, and thus enter upon the defendant's right of way, and by reason thereof were struck and killed by defendant's train; otherwise you will return a verdict for the defendant." Appellant complains of this instruction, and contends that the circumstances must do something more than "fairly and naturally lead to the conclusion," and insists that it must exclude every other reasonable hypothesis, or, in other words, be incapable of explanation upon any other reasonable hypothesis. We think the instruction is in harmony with the rule as announced in *Asbach's Case,* and in the case of *Wheelan, supra.*

IV. Appellant contends that the court, instead of stating the issues to the jury, substantially copied the pleadings. Such a practice has been repeatedly condemned, except where the pleadings as concisely and specifically point out the issues as could be done in a statement of them. The record before us does not show just what the court did in this respect, and we cannot say from it that there was any prejudice to the appellant by the course pursued in presenting the issues to the jury.

Our conclusion, upon the whole record, is that the judgment of the district court should be AFFIRMED.