CHRISTINE KLUMB, Appellant, v. IOWA STATE TRAVELING MEN'S ASSOCIATION.

**Accident Insurance:** CAUSE OF DEATH: PRESUMPTION. Where the cause of death is an issue the presumption is against suicide.

**Same:** CIRCUMSTANTIAL EVIDENCE: SUFFICIENCY. That the circumstances relied upon in proof of an accidental death may furnish any evidence of the conclusion sought to be drawn therefrom, the facts which the evidence tends to prove must be of such nature and so related to each other that the conclusion is the only one which can fairly and reasonably be drawn; it is not enough if they are consistent therewith, if equally consistent with some other conclusion. Evidence that the death of insured was due to a stray bullet is held insufficient to take the issue to the jury.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

WEDNESDAY, MARCH 10, 1909.

ACTION on certificate of accident insurance in the defendant association. At the conclusion of plaintiff's evidence, the court on defendant's motion directed a verdict in its favor, and from the judgment on this verdict plaintiff appeals.—*Affirmed.*

*Parrish & Dowell* and *Parsons & Parsons,* for appellant.

*Sullivan & Sullivan,* for appellee.

McCLAIN, J.—Plaintiff sues as beneficiary under a certificate of accident insurance in the defendant asso-

ciation issued to her husband, John Jacob Carl Klumb, a member of said association, and alleges that the death of her husband occurred by violent, external, and accidental means within the language of the certificate entitling her to the benefits specified on the happening of such an event. It is conceded that plaintiff had the burden of proving the death of her husband by such an accident as described in the certificate, and we proceed to state briefly in narrative form every fact relied upon by the appellant as tending to show such accidental death.

The decedent, a cigar manufacturer, forty-two years of age, who had previously been in good health; left his home in Des Moines on the morning of August 8, 1906, at about seven o'clock, in good spirits. He was last seen about half past two o'clock on the afternoon of that day on Locust Street, in Des Moines, where he engaged in a conversation with a friend with reference to prospective arrangements for holding the usual annual picnic of the German Turners Society at some place along the Des Moines River, instead of at Ashworth's Grove or at Clegg's Woods, in the western part of the city, along the Valley Junction Interurban Line, where such picnics had usually been held, and in this conversation he said he was going out that afternoon to Clegg's Woods and Ashworth's Grove to see what condition the grounds were in at that time. The tract of land known as Clegg's Woods lies on both sides of the Valley Junction track about a half mile west of Ingersoll Park, and Ashworth's Grove is just north and west thereof. These tracts lie west and south from the golf links of the Des Moines Country Club, from which they are separated by a road. On the 24th day of September following the body of deceased was found in a ravine in the woods west of the golf grounds above referred to at a secluded place difficult of access. The coroner was called, and found the

body apparently as it had lain for some time undisturbed, close to the edge of a little stream and near the foot of a tree. The body had evidently been there during a hard rain, and a part of it submerged by the stream. It was badly decomposed, the whole of the abdomen was practically gone, the thoracic cavity was denuded of all tissue, leaving the ribs standing out. The body looked, as though it might have been macerated and then kiln dried. The clothing on the body consisted of a light summer coat, a soft shirt, and pantaloons. It could not be determined on examination whether there had been an undershirt. In the shirt there was a round hole to the left of the median line and about an inch or two below the apex of the heart, a hole into which as a witness testified he could insert the end of his little finger. This hole as the witness said was about the size of a hole which would be made by a .32 or .38 caliber pistol bullet. There was no signs of powder marks. The hole was such as might have been produced by worms, flies, or other insects or crickets. There was no corresponding hole in the coat or shirt such as would have been produced if the bullet had passed through the body and come out at the back, nor was there any indication of a bullet having struck any of the bony structure of the body, nor was any bullet found in the body. On the body was found a watch and a small sum of money, and a half-pint whisky flask. The shirt, as testified by plaintiff, had been ironed the day before deceased put it on, the morning of his disappearance, was a good shirt without holes, and had not often been worn.

The theory of the appellant is that the death of deceased was due to a bullet penetrating a vital part of his body, and that this was a stray bullet from a pistol or small rifle for there are presumptions against felonious homicide and suicide. *Preferred Acci. Ins. Co. v. Field-*

*ing,* 35 Colo. 19 (83 Pac. 1013, 6 L. R. A. (N. S.)
822, 117 Am. St. Rep. 198; 9 Am. & Eng.
Ann. Cas. 946, and note); *Travelers Ins.
Co. v. McConkey,* 127 U. S. 661 (8 Sup.
Ct. 1360, 32 L. Ed. 308); *Taylor v. Pacific
Mut. L. Ins. Co.,* 110 Iowa, 621.

1. ACCIDENT IN-
SURANCE:
cause of
death:
presumption.

The only evidence tending to support this theory,
aside from the fact of the hole in the shirt of deceased,
consisted of testimony of two street car employees, who
during the summer of 1906 ran cars on the
Valley Junction Interurban Line which
passed within about a quarter of a mile of
the place where the body of deceased was
found, that during that summer hunters with guns fre-
quently got off the cars, and went northwest into the
woods in which the body was found, and that hunters
were in there nearly every day after squirrels. On cross-
examination neither of these witnesses was able to say
that he remembered such hunting during the month of
August.

2. SAME:
circumstantial
evidence:
sufficency.

We think that the evidence was not sufficient to
take the case to the jury on their theory. The circum-
stances proven go no further in probative effect than to
suggest the possibility that a bullet penetrated the body
of deceased causing the hole in his shirt, and that the
resulting wound produced death, and the further possi-
bility that such bullet was accidentally fired, and not with
the intention that deceased should be struck thereby. No
weapon was found near the body, nor was there any other
suggestion that a bullet had penetrated the body of
deceased causing his death, save that indicated by the
round hole in his shirt of about such size as that which
might have been caused by a bullet. While it may not
be safe to say as a rule of law that inference can not
be added to inference for the purpose of proving a fact

by circumstantial evidence, yet it is true that every addi-
tional inference necessary in connecting the supposed
cause with the result lessens the weight to be given to
the circumstantial evidence, and the inference may become
so remote that the court is required to say as a· matter
of law that the proposed evidence is insufficient to go to
the jury. "It has been found to be a wise and safe rule
to require circumstantial evidence to go so close to the
fact to be proved that it must be the immediate and direct
inference therefrom. Any other rule would result in
great uncertainty. If the ultimate fact should be drawn
from intervening inferential facts, the probability of its
correctness would be much weakened. It would be a
probability based upon a probability. The law will not
tolerate such uncertainty." *Supreme Council v. Boyle,*
10 Ind. App. 301 (37 N. E. 1105). And see Wigmore,
Evidence, section 30. It is a general rule in determining
whether the circumstances relied upon furnish any evi-
dence whatever of the conclusion sought to be drawn there-
from that the facts which the evidence tends to establish
must be of such nature and so related to each other that
the conclusion is the only one that can fairly or reason-
ably be so drawn. It is not sufficient that they are con-
sistent with such conclusion if they are equally consistent
with some other conclusion. *Gibson v. Iowa Central R.
Co.,* 136 Iowa, 415; *Neal v. Chicago, R. I. & P. R. Co.,*
129 Iowa, 5; *Kling v. Chicago, M. & St. P. R. Co.,* 115
Iowa, 133; *Kennedy v. Chicago & N. W. R. Co.,* 90
Iowa, 754; *Wheelan v. Chicago, M. & St. P. R. Co.,* 85
Iowa, 167; *Daugherty v. Chicago, M. & St. P. R. Co.,*
87 Iowa, 276; *Asbach v. Chicago, B. & Q. R. Co.,* 74
Iowa, 248. The cases relied upon for appellant are not
inconsistent with this statement of the rule. In *Huggard
v. Glucose Sugar Refining Co.,* 132 Iowa,, 724, there was
a presumption to assist the inference which was sought

to be drawn from circumstantial evidence, and in *Bryce v. Chicago, M. & St. P. R. Co.,* 129 Iowa, 342, it was held that the rule was not to be applied to each particular one of the circumstances relied upon together as constituting evidence of the fact to be established, but that all should be considered in determining their probative force.

Taking all the circumstances which the testimony in this case tends to establish, there was no better reason to attribute the death of deceased to a wound inflicted by a stray bullet than to attribute it to some of the maladies which, as is generally known, sometimes produce death in cases of persons apparently in good health.

The judgment is *affirmed.*