CARRIE CARLISLE, Administratrix, Appellee, v. DAVENPORT & MUSCATINE RAILWAY COMPANY, Appellant.

**NEGLIGENCE:** Evidence—Sufficiency—Excessive Train Speed at Station. *Evidence reviewed, and held sufficient to carry to the jury the question of defendant's negligence in the rate of speed employed in running a train past a station, while deceased, in a place of danger, but in compliance with the rules of the company, was signalling the train to stop.*

**NEGLIGENCE:** No-Eyewitness Rule—Presumption of Care. *Principle recognized that, when there is no living eyewitness of an accident, deceased will be presumed to have been exercising due care. Applied in a case where deceased, in the nighttime, at a railway station, and in a place of danger, but in compliance with the rules of the company, was signalling a train to stop.*

NEW TRIAL:   Discretion of Court—Reluctance to Reverse Order
3 Granting.   The trial court has a discretion in granting new
trials, and the appellate court will not ordinarily interfere with
such ruling.

*Appeal from Muscatine District Court.*—A. P. Barker,
Judge.

Saturday, October 28, 1916.

This is an appeal by defendant from an order granting
plaintiff a new trial.—*Affirmed.*

*E. M. Warner,* for appellant.

*Kauffmann & Willis, W. M. Chamberlin* and *J. J. Fish-
burn,* for appellee.

Preston, J.—1. At the close of plaintiff's testimony, the
court sustained defendant's motion for a directed verdict,
but later sustained plaintiff's motion for a new trial.

Defendant operates an electric railroad from Davenport
to Muscatine. Between 9 and 10 o'clock in the evening
of November 8, 1913, plaintiff's intestate was at a station upon
defendant's line called Melphine Station, for the purpose of
becoming a passenger upon one of the cars of defendant com-
pany. It is alleged in the petition that, while plaintiff's
intestate was upon the platform of said station, he was struck
by defendant's car, and received injuries which caused his
death; that deceased was free from contributory negligence.

Several grounds of negligence are alleged in the petition,
but the court sustained the motion for a new trial on the
ground that there was evidence to go to the jury as to only
two of such grounds, which are, in substance:   That deceased
had signalled the motorman to stop; and that the motorman
running the car had answered the signal by two short blasts
of the whistle, but failed to stop said car, which was being

run at a high, dangerous and negligent rate of speed, colliding with the said deceased before he could, in the exercise of ordinary care, get out of the way; and that the car which struck deceased was, under the circumstances, operated at a dangerous, reckless and negligent rate of speed.

On the evening in question, plaintiff's intestate, about 65 years of age, went to the station in question, with the intention of taking passage to Muscatine. Melphine Station is located upon a curve, and because of this, as plaintiff contends, the light is suddenly thrown on the station, and temporarily blinds the prospective passenger. East of the station is an intervening board fence, 4 feet 8 inches above the platform, which plaintiff claims cuts off the view of an approaching car, to a considerable extent. From the east to the west, there is a downward grade of one per cent. The rules of the railway company, which were posted in the station at Melphine, provide:

1. Negligence: evidence: sufficiency: excessive train speed at station.

"When you hear approaching train sound one long blast of whistle for station, step out to the rail and extend one arm horizontally across the track. Remain so until the motorman answers with two short blasts of the whistle, then step back away from the rail. At night, do the same, holding a lighted match or burning paper in your hand, waving same until the motorman replies with two short blasts of the whistle."

Before deceased started to the station, he got a supply of matches, to be used, as plaintiff claims, to signal the car. The evidence tends to show that it was a cold, cloudy night, with the wind blowing from the northwest. No one was present at the station except deceased, and there is no evidence of any eyewitness who saw the accident. At the time in question, the car was late. The evidence tends to show the following state of facts: That, as the car came down the grade, it was traveling at between 45 and 50 miles an hour. The motorman gave one long signal at the usual whistling post, and when he was about 300 feet from the station, he

gave two short blasts of the whistle, and when even with the station, he gave three short blasts of the whistle, and as these blasts were given, deceased was struck. The next morning, blood splashes were found on the platform, splashed in a westerly direction, and a burned piece of paper was lying on the platform.

Some other circumstances will be referred to later in the discussion, in regard to the reason for the ruling by the district court. The motion for new trial was based upon numerous grounds; but the court indicated that, when he sustained defendant's motion for a directed verdict, he was of the opinion that there was not sufficient evidence to take the case to the jury as to any of the grounds of negligence alleged, or that any alleged negligence of the defendant was the proximate cause of the death of deceased, but that, upon reflection, he was of opinion that there was sufficient evidence as to the two grounds before indicated, and that, for this reason, a new trial ought to be granted.

The evidence at some points, particularly as to how the injury occurred, is largely circumstantial. Appellant seeks to bring the case within the rule of some of the cases, that, if it is no more probable that the injury occurred in the manner contended by plaintiff than is the theory of the defendant as to how it occurred, there would be no jury question. The rule, stated briefly, seems to be that plaintiff may establish his case and sustain the burden cast upon him by circumstantial evidence, and, when a cause is shown that might have produced the injury, and the injury happens in that manner, the jury should be left to decide whether or not it was so caused, in the absence of evidence of any other cause. In its opinion, the trial court stated and found,— and we think the record sustains the finding:

"That the jury might well have found from the evidence that deceased left the home of his employer in ample time to have reached the interurban station before the car which he designed to take came in sight of the station; that he was

familiar with the method of signalling the car at night, and
went prepared with matches to give the signal which the rules
of the company had prescribed. That the car approached the
station at a speed and uncontrolled to a degree that would
have been negligent, had a timely signal to stop been given.
That he was upon the platform when struck. Two witnesses
who were upon the car testified as to the giving of signals
by the motorman by the blowing of his whistle. They differ
as to the character and place of the giving of these signals.
One of these witnesses is certain that the signal usually given
when a night passenger is seen by the motorman, and that
the car will stop, was blown at some distance from the station.
The other heard a different signal, and no other, just before
the car struck deceased. Which was correct was for the
jury to say. Plaintiff's theory is that deceased signaled the
car; that his signal was seen and answered, but that the car
was coming at such a negligent rate of speed that, before he
could get out of the way, he was struck. Defendant offered
no theory of the accident in its pleadings, but counsel argue
that deceased had fallen into a doze, while waiting for the
car in the booth erected for the shelter of passengers while
waiting for cars; that he was aroused by the whistle or other
noise of its approach, and rushed out just in time to be
caught by it in passing the station. The question for decision
here then is: Are the facts established by the evidence as
above stated so related to each other that the only conclusion
that can fairly or reasonably be drawn from them is that
deceased had been signaling the car, or was signaling it, and
had been seen by the motorman in time, in the exercise of
reasonable care, to have stopped before the accident when
he was struck? Or is the theory that he was in a doze inside
the shelter and rushed out just in time to be hit with the
car so equally sustained by the evidence that a jury could
only conjecture which is true? Upon the trial, I took the
latter view. Reflection and reading of the cases has led me
to believe that I was in error in so doing. . . . I now think

that I did not allow weight enough to the evidence as to the signals blown by the motorman. There was no passenger to alight at Melphine, and if, as Mr. Goddard testified, the motorman gave the signal that the car was going to stop there, at some distance before he reached the station, it could fairly be presumed from that fact, when considered in connection with the facts that Mr. Dollarhide was undoubtedly at the station when the car came in sight, was there prepared to signal it, and knew how to do so, that he had given the proper signal, and that he knew how to do so, that he had given the proper sign, and that the motorman had seen it. . . . This stopping place was located near the end of a curve and at the foot of quite a grade. The booth was close to the track, and, in following the instructions of the defendant company to the public as to the method of signaling the car in the nighttime to stop, a night passenger was obliged to place himself in a position of danger, if he did not promptly retreat after he was informed that his signal had been discovered by the motorman. If he did not wait until he knew that he had been seen, the car was likely to go by and leave him in the country in the nighttime. The signal, a lighted match or bit of burning paper, unless one carried a lantern or other light, was uncertain and difficult, especially if the night was windy. The location of the station, or the failure to provide a safe and certain method of signaling, may not indicate negligence upon the defendant's part; but it seems just that the motorman, knowing the situation, should be held negligent if he did not approach the station with such care as would avoid injury to one who might be there in the darkness trying to signal him to stop."  ·

The court then indicated that the motion was sustained upon the grounds before indicated. The following cases, and others which might be cited, sustain the theory of the trial court in granting a new trial. *Brownfield v. Chicago, R. I. & P. R. Co.*, 107 Iowa 254, cited in *Lehman v. Minneapolis &*

*St. L. R. Co.*, 153 Iowa 118. See, also, *Avise v. Interurban R. Co.*, 174 Iowa 592.

2. On the question of contributory negligence, the trial court was of opinion that, as there were no eyewitnesses to the accident, deceased was presumed to have been in the

2. NEGLIGENCE: no eyewitness rule: presumption of care.

exercise of due care. *Powers v. Des Moines City R. Co.*, 143 Iowa 427, *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187, 207, and

other cases, are cited. Appellant contends that this presumption does not always obtain, even though there are no eyewitnesses, and that, if all the circumstances under which the injury was received are shown, the presumption cannot prevail against evidence which shows that due care was not exercised. They cite, among other cases, *Crawford v. Chicago, G. W. R. Co.*, 109 Iowa 433; *Raymond v. Burlington, C. R. & N. R. Co.*, 65 Iowa 152; *Ames v. Waterloo & C. F. R. T. Co.*, 120 Iowa 640; *Woolf v. Nauman Co.*, 128 Iowa 261; *Ellis v. Republic Oil Co.*, 133 Iowa 11; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142, 150.

Without going into the evidence, we are satisfied from a reading of it that, under the record, the trial court did not err at this point.

3. It is possible that we have referred to the points already discussed more fully than need be, in view of the rule in regard to granting new trials. It is a familiar rule that

3. NEW TRIAL: discretion of court: reluctance to reverse order granting.

the trial court has a discretion in granting new trials, and this court will not ordinarily interfere with such a ruling. We would not be justified, under the record in this case,

in holding that the trial court abused its discretion at this point. See *Murray v. Chicago, R. I. & P. R. Co.*, 145 Iowa 212, 214; *Tathwell v. Cedar Rapids*, 122 Iowa 50, 58; *Morgan v. Wagner*, 79 Iowa 174. Numerous other cases might be cited.

Our conclusion is that there was no error in the ruling

of the court granting a new trial, and the same is, therefore,—
*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.