TONEY F. JACKSON, Appellant, v. W. J. HANRAHAN et al.,
Appellees.

**MASTER AND SERVANT:** Federal Employers' Liability Act—Negli-
gence—Insufficient Evidence.  In an action under the Federal Em-
ployers' Liability Act, plaintiff must establish negligence on the
part of the master, and that such negligence was the proximate
cause of the injury.  Evidence reviewed, on an assignment that the
master was negligent (1) in starting the train while the brakeman
was on top of a car, (2) in placing a carload of poles in such part
of the train that the brakeman would be compelled to pass over
the same, and (3) in failure to promulgate rules, and held to be
insufficient to establish negligence.

*Appeal from Wapello District Court.—*D. M. ANDERSON, Judge.

OCTOBER 17, 1924.

ACTION under the Federal Employers' Liability Act for
damages for injuries resulting in the death of an employee.
The trial court directed a verdict for the defendant, and the
plaintiff appeals.—*Affirmed.*

*Frank T. Roberts* and *Roberts & Webber,* for appellant.

*Hughes, Taylor & O'Brien* and *Jaques, Tisdale & Jaques,*
for appellees.

FAVILLE, J.—I.  One Jackson was an experienced railroad
brakeman, employed by appellee.  He was forty-five years of
age, and was employed as head brakeman on a freight train.
It is conceded that the train was engaged in interstate commerce.
It was moving in a westerly direction upon appellee's line.

At Chillicothe, Missouri, the train went upon a sidetrack,
to permit an east-bound freight train to pass.  Jackson operated
the switch, and the train passed upon the sidetrack.  He later
opened the switch at the west end of the siding, to permit his
train to pass upon the main track and continue on its journey.

After opening the west switch, Jackson went into the locomotive cab, where he was in the habit of riding while the train was in motion.

The train had gone but a short distance upon the main line when it was suddenly stopped by the conductor, who caused the air to be set upon the train. The reason for the stopping of the train was to enable the conductor to make investigation in regard to a fire. Jackson left his place upon the engine and went back along the train to ascertain the cause of the setting of the air, and it was a part of his duties to do so. When he had gone back some seven or eight cars from the engine, he climbed on top of a box car. The train stood at the time upon a curve, and it was necessary for Jackson to occupy substantially this position in order to receive signals from the rear of the train and to transmit them to the engineer. While upon the top of the train, he received such signals from the rear of the train, and, by movements of his lantern, transmitted the signals to the engineer, and the train proceeded upon its way. Nothing more was seen of Jackson; and the train passed several stations, and finally stopped at Polo, when it was discovered that Jackson was not on the train. An investigation disclosed his mangled body about one mile west of Chillicothe.

The fifth car from the head end of the train was a flat car, loaded with telephone poles. There were uprights on the sides of the car, tied together by wires at the top. There were no handholds on this car.

Upon this state of facts, appellant insists that he was entitled to go to the jury upon the three grounds of negligence upon which he bases recovery. These are: (1) the starting of the train and putting it in motion with the knowledge that Jackson was in a position of peril; (2) the placing of the carload of poles in the train where it would be necessary for Jackson to climb upon and cross the car in the performance of his duty and returning to his place in the locomotive cab; and (3) the failure to promulgate rules requiring the train to remain standing until the head brakeman had reached a place of safety in the cab of the locomotive.

The primary and controlling question in the case is whether

or not there was evidence of negligence on the part of appellee which required the submission of the case to the jury. It is well established that negligence is the basis of all liability for actions brought under the Federal Employers' Liability Act, and that there can be no recovery in the absence of negligence on the part of the railway company or its employees. *Nelson v. Southern R. Co.,* 246 U. S. 253; *Southern R. Co. v. Gray,* 241 U. S. 333; *Seaboard Air Line R. Co. v. Horton,* 233 U. S. 492; *O'Connor v. Chicago, R. I. & P. R. Co.,* 129 Iowa 636; *Hall v. Chicago, R. I. & P. R. Co.,* 199 N. W. 491.

There is no evidence whatever in the record to sustain the first ground of negligence above specified. The undisputed evidence shows that the train was started in the ordinary and usual manner, and that, at the time the train was started, Jackson was on the top of a car to the rear of the load of poles, in a position customarily occupied by a head brakeman. It cannot be held to be negligence on the part of a railway company, under such circumstances as are here disclosed, for the engineer to start the train in the ordinary and usual manner, without jerking or jolting the cars, when an experienced head brakeman is on top of one of the freight cars in such a train. It is a matter of common knowledge that trains are so operated continually, and it cannot be said that it is negligence to start such a train in a proper manner when an experienced head brakeman is standing on top of the train. He cannot, by virtue of such a situation alone, be said to be in a place of peril, under such circumstances.

It is insisted that it was negligence on the part of appellee to place the carload of poles in the train in such a place as that the head brakeman might be required to pass over the same in going to the locomotive cab of the engine. It does not appear that there is any rule made by the railroad company that requires the head brakeman to ride in the locomotive cab. The evidence shows that the head brakeman sometimes rides in the locomotive cab, sometimes in open box cars on the train, sometimes in the ice box of refrigerator cars, sometimes in the caboose, and elsewhere upon the train. There is no fixed place where he is required to be, and his duty does not compel him to

ride in the locomotive cab, any more than on top of a box car. So no duty rested upon Jackson to go to the locomotive cab from the position he occupied upon the seventh or eighth car from the locomotive, for the purpose of riding in the cab.

It cannot be said that the railroad company was bound to anticipate that Jackson might go from the car where he was stationed, while the train was in motion, in an endeavor to reach the locomotive cab by passing over the car of poles. If the car of poles had been farther to the rear end of the train, and Jackson had gone from his position on top of the box car to the caboose, he would have been compelled to pass over the car of poles, under such circumstances. In other words, the railroad company was compelled to carry the load of poles at some place in the train. It cannot be said that the fact that this car of poles was placed the fifth car to the rear of the engine was an act of negligence on the part of the railway company; and, under the undisputed facts, the court did not err in directing a verdict as to this ground of negligence.

The third ground of negligence relied upon by appellant is an alleged failure to make and promulgate rules which would require a train to remain standing until the members of the crew operating the train had reached a place of safety on the train.

Applied especially to the facts of this case, it is the contention that it was negligence on the part of the railway company not to promulgate rules which would have prevented the engineer from starting the train until he knew that Jackson had reached a place of safety from his position on top of the train, either in the locomotive cab or elsewhere.

We may assume, for the sake of the argument, that the duty rests upon the employer to promulgate rules, where there is a plurality of employees who are so related in their work that rules become necessary in order to protect each against danger from the act of the other. See *Rhodes v. Chicago, R. I. & P. R. Co.*, 179 Iowa 599. But we think that such general rule has no application to the facts in this case.

Appellant's contention is that it was the duty of the railway company, through its proper officers or agents, to promulgate rules which would have forbidden the engineer to start the

train, under the circumstances disclosed by the record, until he knew that Jackson had reached a place of safety; or, as appellant contends, there should have been a rule made by the company requiring the engineer to hold the train until Jackson had returned to the locomotive cab.

The difficulty with appellant's contention at this point is that it is erroneous to assume that, where a head brakeman has gone to a locomotive cab from another part of a standing train, in connection with the performance of his duties, he will, under all circumstances, return to the locomotive cab. The undisputed evidence in the case, as we have before stated, shows that it is customary for the head brakeman, in the operation of trains upon appellee's road, and under circumstances disclosed in the record, to ride at various places upon trains. It was a warm night, and the evidence shows that the head brakeman frequently rides on top of a car in the position that Jackson occupied.

Jackson himself signaled the engineer to start the train when he was seven or eight car lengths distant from the locomotive. It would be wholly impracticable to require the engineer of a train to hold the same without movement, after receiving a signal to go forward, until he had personally ascertained that the head brakeman on the train was either in a box car, on a flat car, in a refrigerator car, or at some other point of safety in the train, before the train could be started.

Even if all that is contended for by appellant with regard to the duty to promulgate rules among co-employees for the proper duty which such employees owe to each other be conceded, it cannot be said that the facts in this case presented any question of negligence on the part of appellee in failing to promulgate a rule of the kind contended for by appellant, to wit: that a freight train should not be started in motion, under the circumstances disclosed in this record, until the engineer was advised and knew that the head brakeman was in a place of safety.

The trial court did not err in directing the jury to return a verdict on the ground that appellant had failed to show that

appellee was negligent in any one of the three particulars specified.

II.   Even if it should be conceded that, under the record, appellant made a case for the jury on the question of negligence, still the court did not err in directing a verdict for appellee, under the facts of this case.   There is no evidence whatever in the record upon which to base a conclusion as to the manner in which the injury to Jackson occurred.   Appellant's contention is that Jackson was on the load of poles, on his way to the locomotive cab, when he fell off and was killed.   An examination of the load of poles failed to disclose anything indicating in the least that Jackson had been upon this load and fell therefrom. The train had traveled approximately a mile from the time he was last seen on top of the box car, to the point where his body was afterward found.   From what place on the train he fell, is solely a matter of speculation and conjecture.   Liability for negligence cannot be predicated solely upon matters that are speculative and conjectural.   The accident to Jackson might have happened in the manner claimed by appellant, by his falling from the load of poles.   It might have happened by his falling when passing from the box car to another car, or in some other manner, equally as well.   It is all left in the realm of surmise and speculation.

We must not forget that, even in an action of this kind, under the Federal Employers' Liability Act, the burden rests upon the plaintiff not only to show negligence on the part of the employer, but also to show a causal connection between the negligence charged and the resulting injury.   We have quite recently had occasion to discuss this matter at length, with a review of the authorities, in the case of *Hall v. Chicago, R. I. & P. R. Co.*, 199 N. W. 491.   See, also, *O'Connor v. Chicago, R. I. & P. R. Co.*, supra, and cases therein cited.   As stated in the *O'Connor* case:

"Of course, plaintiff is not required to produce more than a preponderance of the testimony; but if his evidence does no more than create a surmise or conjecture, he cannot recover. Proof of causal connection may be direct or circumstantial; but

the evidence must be something more than consistent with plaintiff's theory as to how the accident occurred.''

We reach the conclusion that the trial court did not err in sustaining appellee's motion for a directed verdict, and that the judgment appealed from must be—*Affirmed.*

ARTHUR, C. J., and EVANS and PRESTON, JJ., concur.