MILTON H. YOUNG, Administrator, Appellant, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILWAY COMPANY, Appellee.

No. 43876.

JUNE 15, 1937.

J. C. Robinson, L. A. Moe, and Raymond Zebker, for appellant.

Hughes, O'Brien & Hughes and Blythe, Markley, Rule, Dibble & Cerney, for appellee.

774

HAMILTON, J.—On the night of January 5, 1935, decedent had been watching a card game in progress at the Granada Cafe, located a block or so from the scene of the accident. He left this place at about five a. m. No one saw him after he left the cafe until he was picked up under a train of cars some 30 minutes later. Fifth and Sixth Streets Southeast in Mason City run directly east and west. Appellee's sidetracks, five or six in number, run north and south across Sixth Street, and come to an end or terminate at Fifth Street. The freight depot is west of the tracks and extends the entire distance between Fifth and Sixth Streets, with a platform on the east side of the depot building. This platform is on a level or even with the floor of an ordinary freight car, and extends the entire distance from the sidewalk line on the north side of Sixth Street to Fifth Street. When a car is on the west track next to this platform, there is a space of only 18 inches between the east edge of the platform and the side of the car. According to the switching crew of appellee company, consisting of the engineer, fireman and two brakemen, who testified at the trial, a refrigerator car had been spotted just north of this sidewalk crossing at about two a. m. that morning, and the car left standing in front of this platform, the south end of the car being practically even with the sidewalk line along the north side of said Sixth Street. At about 5:30 that morning the trainmen had hitched the switch engine on to four other cars and were in the act of pushing them north across Sixth Street for the purpose of coupling them on to this refrigerator car, which had already been placed across the street in front of the depot platform. As they were moving these cars north, one of the brakemen walked ahead to guard the street crossing, the other hung on the northwest corner of the car farthest north that was to be coupled to the refrigerator car. Each of these men had a lantern. As this north freight car to which the brakeman was hanging approached within a few feet of the refrigerator car, the brakeman alighted on to the pavement and stood there watching the cars and giving signals until the automatic coupling took place. They say these cars were proceeding across the street at from one and a half to three miles per hour. The brakeman who had been guarding the street crossing had climbed upon the depot platform and was signaling the engineer to proceed northward, and the train had been moved about a car length when he noticed one of the cars bounce up as

if it had run over something, and at once gave the "bad" stop signal to the engineer, which brought the train to an immediate stop. Upon an investigation they discovered the gruesome sight of decedent's crushed and mangled body lying under a car on this west track, about 65 feet north of the sidewalk extending along the north side of Sixth Street. His head and the upper portion of his body was between the rails under the car, while his lower extremities were west of the west rail of the track which runs directly in front of this platform. The truck wheels had passed over his body, practically severing him in twain. No sound or outcry was heard. One of these trainmen went immediately to a telephone nearby and called police headquarters, notifying them of the accident. Someone notified the coroner, and in a few minutes three policemen, a coroner, and an undertaker appeared upon the scene. They were all examined as witnesses at the trial in the court below.

These two brakemen, who were in a position to see, testified positively that they saw no one on this sidewalk crossing. They did not see him at any time, and did not know what the car had passed over. There is absolutely no proof of the whereabouts of the decedent from the time he left this cafe until he was found dead. Some small blood spots were discovered about six feet north of the sidewalk over which decedent might have been passing on his way home. These blood spots, as well as marks in the snow which appeared to have been made by the decedent's feet dragging in the snow, extended from this point to where the body was found. Aside from this, there is nothing from which the jury could determine whether decedent was on the sidewalk or on the defendant's right of way at the time he was struck. It would be a matter of pure conjecture and mere speculation or guesswork on the part of a jury under this record, should it find the decedent was struck while on the sidewalk. The circumstances are such that it is just as reasonable to assume that he was off the sidewalk and alongside a freight car standing near the sidewalk at the time of the accident.

There is a dispute as to what particular car the body was under when found, and just what particular car the blood stains were upon. But if we give plaintiff's version of the whole affair credence, and concede the truth of the testimony which was proffered and which the court refused to admit—except for impeachment purposes—we are still confronted with the fact that

there is an entire absence of evidence that the negligence alleged was the cause of the death. There is no evidence to show where the deceased went after he left the card game. No one saw him upon Sixth Street or the sidewalk or even approaching the place of the accident. If we attempt to reconcile the testimony of all the witnesses and try to harmonize it on the theory that they were all endeavoring to tell the truth, then it is far more probable that this man was killed while he was in between the refrigerator car and the platform, attending to some need of his own, and in the darkness of the night was unobserved by the trainmen, and the operation of the train from the south was unnoticed by him, and in attempting to leave this place, slipped and fell, or was in some way caught between the platform and the car and was knocked down and dragged along and finally run over and crushed to death. Appellant's theory is that this refrigerator car was not standing over in front of the depot platform, although the entire train crew testified that it had been placed there at two o'clock that morning. Appellant's theory is that the refrigerator car was bunted or kicked across Sixth Street, unaccompanied by anyone, and without any warnings or danger signs or signals, ran over the decedent while he was on the sidewalk along the north side of Sixth Street. This theory is bottomed upon some evidence given by the coroner that was not admitted by the court. The coroner who arrived sometime between 15 and 30 minutes after the accident was asked whether he had a conversation with Jones, one of the switchmen, and whether Jones didn't say to him that they bunted this refrigerator car across Sixth Street. This statement was objected to, and the objection was sustained. Later, the court permitted the evidence to be received for impeachment purposes. Jones denied making such statement to the coroner. The witness giving this impeaching testimony, while impeaching Jones on this point, impeached himself on another just as vital. In his testimony when he was first on the witness stand he testified: "The body was lying toward the northeast and there were three cars in there. The body was beneath the refrigerator car." Later, when giving his impeaching testimony he said: "The body was under the refrigerator car. There were no cars south of the refrigerator car and north of the Sixth Street intersection or sidewalk line." The trainmen had testified that after the accident the train was uncoupled to clear the crossing, leaving the

refrigerator car and two freight cars north of the crossing. Of course, the credibility of these witnesses would have been a matter for the jury had the case been submitted to the jury, but even assuming the car was bunted, there is still the absence of any evidence that decedent was on the crossing at the time he was struck, and without this evidence, plaintiff, under the repeated holdings of this court, cannot recover.

This matter was squarely presented to the trial court in the first ground of the defendant's motion for directed verdict, in this language:

"There is no evidence that the deceased was struck within the bounds of Sixth Street or on Sixth Street, or at any point where defendant owed him any duty whatever, in fact there is no evidence that he was seen on Sixth Street or that he was on Sixth Street at all, or that the defendant saw him as a trespasser on its tracks outside of the street, but the manner of his injury and where his injury occurred rests on mere speculation and conjecture and guess, and for that reason plaintiff's cause of action has not been made out."

In Jackson v. Hanrahan, 198 Iowa 704, 709, 200 N. W. 202, 205, we said:

"Liability for negligence cannot be predicated solely upon matters that are speculative and conjectural. * * * 'Of course, plaintiff is not required to produce more than a preponderance of the testimony; but if his evidence does no more than create a surmise or conjecture, he cannot recover. Proof of causal connection may be direct or circumstantial; but the evidence must be something more than consistent with plaintiff's theory as to how the accident occurred.' " Citing O'Connor v. Chicago, R. I. & P. R. Co., 129 Iowa 636, 106 N. W. 161.

In a recent case handed down by this court, Comparet v. Wm. H. Metz Co., 222 Iowa 1328, 1333, 271 N. W. 847, 849, we said:

"The evidence in this case is purely circumstantial, and it is the universal rule of law that there can be no recovery upon circumstantial evidence alone unless the circumstances are so clear that they are inconsistent with any other theory than that of defendant's liability. Where plaintiff's right of recovery depends upon conclusions to be drawn from circumstantial

evidence, the evidence must be inconsistent with any other theory than that establishing the defendant's liability. Asbach v. C. B. & Q. Ry. Co., 74 Iowa 248, 37 N. W. 182; Daugherty v. C. M. & St. P. R. Co., 87 Iowa 276, 54 N W. 219; Kennedy v. C. &. N. W. R. Co., 90 Iowa 754, 57 N. W. 862; Kling v. C. M. & St. P. R. Co, 115 Iowa 133, 88 N. W. 355; Bryce v. C. M. & St. P. R. Co., 129 Iowa 342, 105 N. W. 497; Gibson v. Iowa Cent. R. Co., 136 Iowa 415, 113 N. W. 927; Ohlson v. Sac County Fire Ins. Assn., 191 Iowa 479, 182 N. W. 879; Hemminger v. City of Des Moines, 199 Iowa 1302, 203 N. W. 822; Tracy v. Liberty Oil Co., 208 Iowa 882, 226 N. W. 178; Stickling v. C. R. I. & P. R. Co., 212 Iowa 149, 232 N. W. 677."

Again in Swaim v. C. R. I. & P. R. Co., 187 Iowa 466, 471, 174 N. W. 384, 386, we said:

"If, under all the proved circumstances, the conclusion that the injury was the proximate result of defendant's negligence is no more reasonable or probable or likely than that it was brought about by some other cause, for which the defendant is not responsible, then, of course, the plaintiff has failed to establish a fact without which he cannot recover."

Likewise, in Field v. Southern Surety Co., 211 Iowa 1239, 1247, 235 N. W. 571, 575:

"The evidence is circumstantial, and as to this matter it is merely speculative and conjectural. Verdicts may not be based on mere surmise or conjecture. The circumstantial evidence must be something more than consistent with appellant's theory as to how the accident occurred. It must exclude every other reasonable hypothesis."

Many more authorities might be cited to the same effect. Decedent had been up until the wee small hours of the morning, watching this card game. The evidence shows that he could travel north from this place to Sixth Street and go down Sixth Street east across these railroad tracks and thence south to where he lived. Whether he took this course or not is mere guesswork. He might have gone to some other point in town. He might have been traveling down this track from Fifth Street. He might have slipped on the snow piled along the track. No one knows what direction he took, where he went, or how he

arrived at the spot where he was run over. About a half hour intervened, according to the testimony, from the time he left the cafe, until he was run over. There is nothing definite in the record as to the time which elapsed between the time he left the cafe and the time he was run over. The operator of the cafe gave as his best judgment that it was about 5 a. m. when he left, and the testimony indicated that it was about 5:30 when his body was found.

Appellant's contention that the "no eyewitness" rule raises the presumption that the decedent was exercising due care for his own safety in crossing the railroad track does not reach to the point of proving by another presumption that he was actually upon the crossing when he was struck. In other words, this presumption only goes to the question of freedom from contributory negligence, and cannot be used to supply the need of proof of causal connection between the negligence of the defendant and the injury and death of the decedent. The case of Phillips v. Ry. Co., 77 Wis. 349, 46 N. W. 543, 544, 9 L. R. A. 521, cited and relied upon by appellant, presents a set of facts quite parallel in most respects with the case at bar, but there was this very important difference: In that case the decedent when last seen was walking on the sidewalk, and blood was found on the east side of, and upon, the sidewalk. Thus, there were circumstances supporting the fact that decedent was on the sidewalk, and since there was no eyewitness, the law presumes that he was exercising due care in making the crossing over the tracks of the railroad company, and the court allowed the case to go to the jury. In the instant case, we have no evidence that the decedent was on the sidewalk crossing at the time he was injured. In the last cited case the court said: "If it is shown that he met his death while walking on the sidewalk, where he had a right to be, that is sufficient for the plaintiff's case." Likewise in the cases of Carlisle v. Ry. Co., 178 Iowa 224, 159 N. W. 667, Bettinger v. Loring, 168 Iowa 103, 150 N. W. 31, and Platter v. Minneapolis Ry. Co., 162 Iowa 142, 143 N. W. 992, and other cases cited by appellant, the facts are distinguishable in the same vital and material respect from the facts in the case at bar.

The plaintiff having failed to meet the burden of proving that negligence on the part of the defendant company was the cause of the death of the decedent, the court was right in sus-

taining the motion to direct a verdict, and the case is affirmed.—
Affirmed.

RICHARDS, C. J., and PARSONS, SAGER, ANDERSON, MITCHELL, KINTZINGER, STIGER, and DONEGAN, JJ., concur.